CONSEJO DE TITULARES CONDOMINIO KING'S COURT 76, ETC., ET AL., demandantes y recurridos, *v.* HÉCTOR (WALLY) VARGAS y su esposa DELIA COBIÁN DE VARGAS, demandados y recurrentes.

Número: R-71-275      Resuelto: 5 de septiembre de 1973

580

*Rafael Rosario Hernández,* abogado de los recurrentes; *Jorge Souss* y *Flavio E. Cumpiano,* abogados de los recurridos; *Canales & Ferrer,* abogados del *amicus curiae* Ferramont Investment Corporation.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La escritura pública o título constitutivo mediante la cual se sometió al régimen de propiedad horizontal el edificio King's Court Núm. 76, en Santurce, del que son condóminos tanto recurrentes como recurridos, contiene dos cláusulas relevantes a este litigio que traducimos: (1)

---

(1) Su versión original según aparece de la escritura redactada en inglés es la siguiente:

"—FIFTH: THE GENERAL COMMON ELEMENTS: The general common elements of Condominio King's Court. Seventy Six . . . include, but are not limited to, the following:

"QUINTA: ELEMENTOS COMUNES GENERALES: Los elementos comunes generales del Condominio King's Court 76 . . . incluyen, aunque no limitados a, los siguientes:

.    .    .    .    .    .    .    .

n) el techo, incluyendo el cuarto de máquinas del ascensor, vestíbulo de la escalera, la chimenea y la cámara del incinerador.

"SEXTA: ELEMENTO COMÚN LIMITADO: Todo el techo será un elemento común limitado para el exclusivo uso y disfrute de los cuatro apartamientos situados en el noveno piso del edificio. Todos los gastos necesarios para la reparación y conservación de dicho elemento común limitado serán por cuenta y cargo de los dueños de dichos cuatro apartamientos. Estos quedan autorizados para introducir en el techo aquellas mejoras propias para el disfrute cabal de ese espacio como área abierta de recreo, siempre y cuando dichas mejoras no menoscaben la configuración arquitectónica del edificio, y sujeto además a que se adopten las medidas necesarias para proteger las personas que usen dicha área de techo contra riesgos previsibles de accidente."

El referido edificio King's Court 76 está destinado a vivienda. El demandado Vargas es dueño y titular del apartamiento 902, uno de los radicados en el noveno piso, por lo que el techo de su departamento es también parte de la cubierta o techo de todo el edificio. Dicho demandado perforó ese techo cortando y removiendo varias varillas de refuerzo de ¾″ de diámetro, abrió un hueco de unos 5½ pies de diámetro y construyó sobre el techo y en torno al hueco de acceso, una estruc-

---

.    .    .    .    .    .    .    .

n) The roof, including the elevator, machinery room, the stairway landing, the chimney, and the incinerator settling chamber.

"—SIXTH: LIMITED COMMON ELEMENT: The entire roof shall be a common element limited to the exclusive use and enjoyment of the four apartments located on the ninth floor of the building. All expenses in connection with the repair and maintenance of said limited common element shall be for the sole account of the owners of the aforesaid four apartments. Said owners are authorized to make such improvements (mejoras) to the roof area as may be convenient to the efficient enjoyment of such space as an open recreational area, provided such improvements do not detract from the general architectural harmony of the building, and provided further that the necessary safety measures shall be taken to guard persons on such roof area against foreseeable accident risks."

tura de 24′ x 38′ x 8′ de luz con paredes de hormigón y bloques, techada con cartón embreado sostenido por viguetas de madera, dotando su piso de losetas,˙ y ocupando con la edificación superpuesta aproximadamente una cuarta parte del techo o cubierta del condominio. Veintisiete de los treinta y seis titulares de apartamientos individuales objetaron la obra como ilegal y lesiva a la solidez, seguridad y estética del edificio, acudiendo primero a la Junta de Planificación que ordenó la paralización de la obra, y como no surtiera dicha orden la eficacia debida, al tribunal con una solicitud de *injunction* y reclamación de daños. Sometida por estipulación escrita y evidencia documental la petición de *injunction* la sala de instancia declaró nula la Cláusula Sexta arriba transcrita y expidió auto permanente ordenando la demolición y remoción de la estructura sobrepuesta y la restitución del techo a su condición original. De dicha sentencia recurre el demandado alegando diez errores los cuales pueden reducirse a dos planteamientos: (1) que fue lícita y autorizada la construcción por el recurrente de la superestructura objetada; y, (2) que los recurridos carecen de personalidad para demandar la remoción de dicha obra.

I

El título constitutivo o escritura pública de una propiedad por pisos o apartamientos individuales dispuesto en los Arts. 22 y ss. de la Ley de la Propiedad Horizontal (104 de 25 de junio de 1958—31 L.P.R.A. secs. 1291 y ss) es un estatuto privado que gobierna a los condóminos o titulares, y que una vez inscrito en el Registro de la Propiedad también obliga a tercero. A dicha escritura matriz, salvado el principio del Art. 1207 del Código Civil (31 L.P.R.A. sec. 3372) relativo a las leyes, la moral y el orden público, hemos de acudir para dirimir el conflicto en este caso pues todos y cada uno de los titulares al comprar sus respectivos apartamientos lleva-

ron a efecto un claro acto de adhesión a lo allí estipulado. (²) El título constitutivo de la propiedad en condominio recoge acuerdos y pactos que "tienen un origen plurilateral cuando son establecidos en principio y por convenio por todos los interesados, o pueden tener origen unilateral cuando son establecidos por el propietario único del inmueble antes de dividirlo por pisos, formando un estado de derecho que se acepta sucesivamente por los adquirentes conforme van realizando sus adquisiciones, en cuyo caso nos hallamos más bien ante un contrato de adhesión." Battle Vázquez, *La Propiedad de Casas por Pisos*", pág. 65, 3ra. ed., (1956).

■ Remitiéndonos, por tanto, a la escritura como fuente primaria de derechos y obligaciones entre los condóminos, encontramos que si bien sus cláusulas transcritas mencionan el "techo", este vocablo se ha utilizado indistintamente con "azotea" para llamar así la cubierta al tope del edificio. La interacción y equivalencia funcional de ambos conceptos las sintetiza Borja Martínez, a la pág. 171 de su obra *"La Propiedad de Pisos o Departamentos en el Derecho Mexicano*" al decir que techo es "la parte inferior y superior de un edificio que lo cubre y cierra; y azotea es la cubierta llana de un edificio dispuesta para poder andar por ella de donde se deduce según su configuración física un techo puede o no ser al mismo tiempo azotea."

---

(²) Así se desprende de la Cláusula Segunda de la escritura de compraventa que transcrita en lo pertinente dice:

"La Vendedora VENDE, CEDE Y TRASPASA al Comprador, que lo compra, el apartamento y demás facilidades descritas en la Cláusula Primera precedente, con todos sus usos, anexos, derechos y accesiones, libre de toda carga, gravamen o restricción, sin reservas ni limitación alguna, excepto las condiciones, restricciones, reservas o limitaciones que surgen de: la escritura de Constitución del Régimen de Propiedad Horizontal, escritura Número doscientos noventa y dos (292), otorgada en San Juan, Puerto Rico, el día primero de mayo de mil novecientos setenta ante el Notario Esteban García Malatrasi; del Reglamento titulado 'Governing the Administration and Co-Ownership of a Property Known as Condominio King's Court 76, Located at 76 King's Court Street, San Juan, Puerto Rico' que aparece adherido y forma parte de dicha escritura y de las disposiciones de la Ley de la Propiedad Horizontal, . . . ."

La evidencia ante el tribunal a quo dejó establecido que el techo del condominio King's Court 76 es susceptible de usarse como azotea, por lo que siguiendo la norma de interpretación que propicia la percepción de la verdadera voluntad de los contratantes(³) a veces opacada por la insuficiencia linguística, y en este caso en particular por las dificultades de quien utiliza como medio de expresión una lengua que no es su vernáculo, concedemos que fue "azotea" y no "techo" lo que se propuso afectar la Cláusula Sexta para beneficio de los titulares del noveno piso. No hay, por tanto, contradicción entre las Cláusulas Quinta y Sexta.

El elemento común azotea es uno cuya existencia puede regularse por acuerdo de los titulares individuales. Así lo provee el Art. 11 (c) de la Ley de la Propiedad Horizontal (31 L.P.R.A. sec. 1291i (c) que la considera elemento común general al igual que sótanos, patios y jardines "salvo disposición o estipulación en contrario." Claramente la Ley da autonomía tanto al propietario original como a los titulares subsiguientes para hacer lo que en este caso se hizo por el propietario primitivo constituyente de la propiedad horizontal que lo fue Ferramont Investment Corporation, mediante la Cláusula Sexta de la escritura matriz, a saber, modificar la función y uso de la azotea cambiando dicho elemento común general a elemento común limitado en su disfrute a los residentes de los cuatro apartamientos del noveno piso. Habiéndose así estipulado por el titular único al tiempo de someter el edificio al régimen de propiedad horizontal, estipulación a la que se adhirieron los compradores de apartamientos colocándose dentro del régimen ya establecido, era a todas luces innecesario el consentimiento unánime de los titulares exigido por el

---

(³) Art. 1233 del Código Civil (31 L.P.R.A. sec. 3471).

"Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas."

"Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas."

Art. 16 de la Ley de Propiedad Horizontal "para toda obra que afecte los elementos comunes del inmueble", pues ya por su adhesión al régimen los titulares quejosos habían consentido la modificación afectadora de la azotea.

La mencionada Cláusula Sexta no es nula, sino válida, y por ser obligatoria para ambas partes en litigio toca ahora decidir si sus términos autorizan la obra realizada por el demandado perforando el techo y levantando sobre el nivel del mismo una estructura con paredes y cubierta que ocupa la cuarta parte de toda la azotea. [4] Dicha cláusula sólo autoriza a los demandados a introducir en la azotea o techo mejoras que faciliten su uso como *área abierta de recreo* sin menoscabo de la armonía arquitectónica del edificio. La obra llevada a efecto por el demandado convierte de abierta a cerrada una cuarta parte del área de recreo y opera en grave detrimento de la configuración arquitectónica del edificio. El mirador o aditamento fabricado por el demandado no es una mejora de recreo, pues tiene naturaleza de edificación permanente. *Cf. Aybar* v. *Jiménez,* 60 D.P.R. 745 (1942). En cambio dicha obra objetada sí ha invadido el "vuelo" que es elemento común en el aprovechamiento del edificio. [5] Se entiende por vuelo la parte ideal del edificio susceptible de ser construida, no un elemento material y tangible, sino el espacio aéreo en la parte superior de la cubierta o techo en el que puede ser elevada la edificación. Llámase sobreelevación al acto de utilizar ese derecho.

[4] El hecho de que el tejado (techo o cubierta) pertenezca en copropiedad a todos los dueños de departamentos no impide que se conceda a uno o a varios de éstos el uso exclusivo del techo o azotea; cuando esto suceda los derechos y las obligaciones del usuario se regirán por las reglas que se hayan estipulado al concederle el uso. Borjas Martínez, *"La Propiedad de Pisos o Departamentos en el Derecho Mexicano"*, pág. 171.

[5] No es nula la cláusula inserta en la escritura de división de una finca con respecto a la utilización exclusiva de dicha terraza lo cual, por otra parte, no comporta desde luego el que, con tal utilización se pueda invadir el denominado "vuelo" como elemento común en el aprovechamiento del edificio. Fuentes Lojo, *"Suma de la Propiedad por Apartamentos"*, Tomo I, pág. 440.

■ La Cláusula Sexta no concedió al demandado el derecho de sobreelevación, ya que ningún esfuerzo de la imaginación podrá incorporar ese concepto al de "improvements [mejoras] to the roof area as may be convenient to the efficient enjoyment of such space as an open recreational area." Para todo efecto práctico el demandado añadió un segundo piso a su apartamiento y su acción, no autorizada en forma alguna, (6) contraviene el Art. 18 de la Ley de la Propiedad Horizontal que exige el consentimiento unánime de los titulares para la construcción de nuevos pisos. El consentimiento dado por los recurridos al solidarizarse con las estipulaciones del título constituyente de condominio fue cualificado y restringido por el lenguaje de la Cláusula Sexta que bajo ningún ejercicio racional comprente el derecho de sobreelevación. Este derecho, por traer consigo la introducción al edificio de nuevos elementos arquitectónicos, económicos y estéticos, y por afectar fundamentalmente el régimen de copropiedad, no puede nacer de inferencias o especulaciones. Su concesión deber ser clara y explícita.

Existen razones de ingeniería, de física, de economía, de euritmia y de buena convivencia para que el comprador de un departamento en condominio prefiera un edificio cuyo régimen y título constitutivo le garanticen una azotea abierta (7) destinada al recreo de determinados residentes. El inconsulto acto de sobreelevación es contrario a ley y al orden reglado para este condominio, y defrauda la buena fe de los titulares objetantes. No puede prevalecer.

---

(6) La Junta de Planificación le negó al demandado permiso de construcción y ordenó la paralización de la obra por no ajustarse a los reglamentos de dicha agencia.

(7) Una azotea abierta y despejada que permitió el descenso de helicópteros fue elemento decisivo entre la incineración y la vida de cientos de ocupantes en el incendio de julio pasado en el multipisos de Avianca, en Bogotá, Colombia.

## II

La azotea no perdió su condición de elemento común al convertirse de general a limitado por la disposición que asignó su uso a los titulares del noveno piso. Y todos los elementos comunes del inmueble, tanto los generales como los limitados, son propiedad en indivisión forzosa por el tiempo que dure el régimen de propiedad horizontal, de todos los titulares. (Art. 13 Ley citada—31 L.P.R.A. sec. 1291k.) Ya que los recurridos no han renunciado ni pueden renunciar a su dominio compartido pro indiviso de este elemento común limitado ellos tienen un claro interés legal y económico en la acción que ejercitan e innegable personalidad para traer esta reclamación.

*Se confirmará la sentencia recurrida.*

Los Jueces Asociados, Señores Dávila, Martín e Irizarry Yunqué, no intervinieron.