COSTA LINDA, INC., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE LA SECCIÓN OCTAVA DE SAN JUAN, recurrido.

*Número:* O-78-472 *Resuelto:* 17 de junio de 1980

*Alberto Ferrer,* abogado de la recurrente; la Registradora recurrida compareció por escrito.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El presente recurso plantea si puede el propietario de un edificio, al someterlo al régimen de propiedad horizontal, hacer reserva del derecho de sobreelevación para uno de los apartamientos. Resolvemos que ello sería contrario al Art. 11 de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1291i, que establece que el vuelo es un elemento común general no susceptible de disposición o estipulación en contrario.

La recurrente, Costa Linda, Inc., dueña de un edificio de diez y seis pisos subdivididos en apartamientos residenciales, otorgó escritura pública el 22 de diciembre de 1977, en virtud de la cual sometió el inmueble al régimen de propiedad horizontal, con el nombre de Condominio Las Gaviotas. Se dispuso en la cláusula undécima, letra (a), de la escritura lo siguiente:

"UNDÉCIMO: ELEMENTOS COMUNES GENERALES:

Son elementos comunes generales del CONDOMINIO LAS GAVIOTAS, los siguientes:

(a) El terreno en que se asienta el edificio, descrito en el párrafo Tercero que precede, y sujeto a la reserva de derechos que más adelante se expresa en el párrafo Duodécimo, el vuelo...."

La cláusula duodécima dice, en lo aquí pertinente:

"DUODÉCIMO: ELEMENTO COMÚN LIMITADO Y RESERVA DE DERECHO RESPECTO DEL MISMO:

La azotea se considerará un elemento común limitado al servicio exclusivo de los apartamentos designados Penthouse Uno y Penthouse Dos. En el uso y disfrute de dicha azotea, el titular del Penthouse Uno estará limitado exclusivamente al uso del área que queda directamente sobre el techo de dicho apartamento.

. . . . . . . .

Por la presente se le reserva al titular del apartamento denominado Penthouse Uno, en relación con aquella parte de la azotea cuyo uso y disfrute exclusivo aquí se concede, el derecho de sobre-elevación hasta una altura no mayor de veinte pies, sin ninguna otra restricción, en el ejercicio de tal derecho, que la de no impedir, entorpecer, o afectar el acceso a, o el debido funcionamiento y mantenimiento de las instalaciones y equipo de propiedad común que ubican en la referida azotea.

En caso de que dicho titular ejercite el referido derecho de elevación, la Junta de Directores representada por su Presidente, otorgará una escritura pública reajustando los porcientos establecidos en el párrafo Décimo precedente, mediante la adición del área de construcción envuelta en la sobre-elevación a la superficie total de las unidades de propiedad exclusiva, y describiendo dicha construcción.

. . . . . . . ."

Presentada dicha escritura al Registro de la Propiedad, se inscribió el inmueble constituido en régimen de propiedad horizontal, pero se denegaron las cláusulas once y doce, en cuanto a los aspectos que hemos transcrito, tomándose la correspondiente anotación preventiva. Se adujo en la nota denegatoria que la reserva del derecho de sobreelevación a favor del Penthouse Uno es contrario a lo establecido en el Art. 11 de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1291i, por constituir una limitación del vuelo, (¹) que es un elemento común general del inmueble. Se objetó, además, que "la cláusula undécima no permite conocer el alcance, extensión, limitación y circunstancias del derecho real de sobreelevación que se pretende inscribir", en conflicto con los Arts. 9 y 63 de la Ley Hipotecaria y su Reglamento, respectivamente. Por último, se señaló que la cláusula duodécima conflige con "el espíritu" de la Ley de Propiedad Horizontal porque delega en la Junta de Directores del Condominio Las Gaviotas "el derecho de aprobar y fijar las nuevas cuotas o porcentajes de participación en la futura o futuras plantas que puedan añadirse, así como de modificar o reajustar las cuotas fijadas para todos los apartamentos o locales ya existentes, sin intervención de los respectivos titulares o Consejo de Titulares resultante a dicha fecha".

---

(¹) En *Consejo de Titulares* v. *Vargas*, 101 D.P.R. 579, 585 (1973), definimos los términos "vuelo" y "sobreelevación" así: "Se entiende por vuelo la parte ideal del edificio susceptible de ser construida, no un elemento material y tangible, sino el espacio aéreo en la parte superior de la cubierta o techo en el que puede ser elevada la edificación. Llámase sobreelevación al acto de utilizar ese derecho."

Costa Linda, Inc., inconforme con dicha denegatoria, ha recurrido ante nos.

No es menester considerar los últimos dos motivos aducidos por la Registradora. Coincidimos con ella en que la reserva del derecho de sobreelevación hecha en dicha escritura es impermisible bajo el citado Art. 11 de la Ley de Propiedad Horizontal, según quedó enmendado por la Ley Núm. 157 de 4 de junio de 1976, vigente cuando se otorgó la escritura y en la fecha de su presentación en el Registro de la Propiedad. No siendo inscribible dicha reserva del derecho de sobreelevación, es innecesario pasar juicio sobre si las referidas cláusulas violan el principio de especialidad de la Ley Hipotecaria y las disposiciones relativas a los poderes de la Junta de Directores para reajustar las cuotas o porcentajes de participación de los apartamientos.

En su bien elaborado alegato, la recurrente, Costa Linda, Inc., hace abundante acopio de citas de los comentaristas españoles M. Fernández Martín-Granizo, *La ley de propiedad horizontal en el Derecho español*, 2da ed., 1973, y Juan V. Fuentes Lojo, *Suma de la propiedad por apartamentos*, Barcelona, 1969, para sostener que se puede pactar sobre el derecho al vuelo de un edificio sometido al régimen de propiedad horizontal y hacerse reserva del derecho de sobreelevación a favor de un determinado apartamiento. Como veremos, la posición de esos comentaristas está basada en la ley española. La nuestra no se adoptó siguiendo a la española. Tuvo por modelo la Ley Decreto Núm. 47 de Cuba, de 16 de septiembre de 1952. *Arce* v. *Caribbean Home Const. Corp.*, 108 D.P.R. 225 (1978). Y cuando se enmendó en 1976 para incluir el vuelo entre los elementos comunes generales, no se incluyó dicho elemento entre aquellos susceptibles de apropiación particular. Así se desprende claramente del historial legislativo de la citada ley enmendatoria.

Antes de la enmienda del 1976, el Art. 11 de la Ley de Propiedad Horizontal, Ley Núm. 104 de 25 de junio de 1958 (31 L.P.R.A. sec. 1291i) disponía:

*"Sec. 1291i. Elementos generales del inmueble*

Se consideran elementos comunes generales del inmueble:

(a) El terreno en que se asiente el edificio.

(b) Los cimientos, paredes maestras, techos, galerías, vestíbulos, escaleras, y vías de entrada y salida o de comunicación.

(c) Los sótanos, azoteas, patios y jardines, salvo disposición o estipulación en contrario.

(d) Los locales destinados a alojamiento de porteros o encargados del edificio, salvo disposición o estipulación en contrario.

(e) Los locales o instalaciones de servicios centrales, como electricidad, luz, gas, agua fría y caliente, refrigeración, cisternas, tanques y bombas de agua, y demás similares.

(f) Los ascensores, incineradores de residuos y, en general, todos los artefactos o instalaciones existentes para beneficio común.

(g) Todo lo demás que fuere racionalmente de uso común del edificio o necesario para su existencia, conservación y seguridad." ([2])

La Ley Núm. 157 de 4 de junio de 1976 enmendó dicho artículo para añadir el vuelo y las áreas destinadas a actividades recreativas en el inciso (a), sustituir el inciso (g) para incluir entre los elementos comunes, "salvo disposición

---

([2]) El Art. 11 de la Ley Decreto Núm. 47 de Cuba, de 16 de septiembre de 1952, correspondiente al nuestro, decía así:

"Se considerarán elementos comunes generales del inmueble:

a) el terreno en que se asiente el edificio.

b) los cimientos, paredes maestras, techos, galerías, vestíbulos, escaleras y vías de entrada y salida o de comunicación.

c) los sótanos, azotea, patios y jardines, *salvo disposición o estipulación en contrario.*

d) los locales destinados a alojamiento de porteros o encargados del edificio, *salvo disposición o estipulación en contrario.*

e) los locales o instalaciones de servicios centrales, como electricidad, luz, gas, agua fría y caliente, refrigeración, cisternas, tanques y bombas de agua y demás similares.

f) los ascensores, incineradores de residuos y, en general, todos los artefactos o instalaciones existentes para beneficio común.

g) todo lo demás que fuere racionalmente de uso común del edificio o necesario para su existencia, conservación y seguridad." (Énfasis suplido.)

Orlando Gómez Gil, *La propiedad horizontal en Cuba*, La Habana, 1954, pág. 155.

o estipulación en contrario", a las áreas de estacionamiento, y para redesignar como inciso (h) el anterior inciso (g), añadiéndole, entre los criterios generales determinantes de los elementos comunes, aquellos referentes al "adecuado uso y disfrute" común del inmueble. Dice así dicho artículo, luego de la enmienda del 1976:

"Se consideran elementos comunes generales del inmueble:

(a) El terreno, el vuelo y toda área destinada a actividades recreativas.

(b) Los cimientos, paredes maestras, techos, galerías, vestíbulos, escaleras y vías de entrada y salida o de comunicación.

(c) Los sótanos, azoteas, patios y jardines, salvo disposición o estipulación en contrario.

(d) Los locales destinados a alojamiento de porteros o encargados, salvo disposición o estipulación en contrario.

(e) Los locales o instalaciones de servicios centrales, como electricidad, luz, gas, agua fría y caliente, refrigeración, cisternas, tanques y bombas de agua, y demás similares.

(f) Los ascensores, incineradores de residuos y, en general todos los artefactos o instalaciones existentes para beneficio común.

(g) Toda área destinada a estacionamiento, salvo disposición o estipulación en contrario.

(h) Todo lo demás que fuere racionalmente de uso común del inmueble o necesario para su existencia, conservación, seguridad y adecuado uso y disfrute."

Argumenta la recurrente que la inclusión del vuelo entre los elementos comunes se hizo siguiendo la ley española. Es posible que el hecho de que se enmendara la ley española en 1960 para incluir el vuelo diera base a su inclusión también en la nuestra. Pero las redacciones de la ley española y de la nuestra en cuanto al derecho sobre el vuelo, al incluirse en cada una, son muy diferentes. El Art. 396 del Código Civil de España, luego de su enmienda por la Ley Núm. 49 de 21 de julio de 1960, quedó redactado de la manera siguiente, en lo que aquí nos concierne:

"Los diferentes pisos o locales de un edificio o las partes de ellos susceptibles de aprovechamiento independiente por tener

salida propia a un elemento común de aquél o a la vía pública, podrán ser objeto de propiedad separada, que llevará inherente un derecho de copropiedad sobre los demás elementos del edificio necesarios para su adecuado uso y disfrute, tales como el suelo, *vuelo*, cimentaciones, pasos, muros, fosos, patios, pozos, escaleras, porterías, ascensores, corredores, cubiertas, canalizaciones y servidumbres. . . ." (Énfasis nuestro.) *Propiedad horizontal*, Ministerio de Justicia, Boletín oficial del Estado, Madrid, 1977, pág. 23.

Nótese que este artículo no distingue entre los elementos comunes a base de que se admita estipulación en contra de su propiedad en común. El legislador puertorriqueño, sin embargo, tuvo buen cuidado de no incluir el vuelo entre aquellos elementos comunes relacionados en los incisos (c), (d), y (g), que se consideran comunes "salvo disposición o estipulación en contrario". Los relacionados en los otros incisos no están sujetos a esa salvedad.

█ Señalamos en *Arce* v. *Caribbean Home Const. Corp.*, antes citado, que el Art. 11 enumera elementos comunes generales voluntarios y elementos comunes generales necesarios. En los primeros se admiten disposiciones y pactos contrarios a su naturaleza común; en los segundos no se permiten. El vuelo ha sido incluido entre estos últimos en virtud de la citada Ley Núm. 157 de 1976.

Aparte de lo claro que así resulta de la lectura del Art. 11, según enmendado, el historial legislativo de la citada ley enmendatoria, Ley Núm. 157 de 1976, demuestra que no fue por inadvertencia que se incluyó el vuelo entre los elementos comunes no susceptibles de propiedad separada. El proyecto original para enmendar la Ley de Propiedad Horizontal vigente desde 1958 fue presentado en el Senado por el señor Cancel Ríos el 5 de marzo de 1973. Era el P. del S. 195. (3) En

---

(3) Nos dice la recurrente en un escolio de su alegato que dicho proyecto, que "no prosperó", fue preparado precisamente por el abogado que aquí la representa, "quien entendió deseable incluir 'el vuelo', como tal elemento común, influido directamente por la doctrina y la experiencia españolas".

dicho proyecto se enmendaba el Art. 11 para incluir el vuelo en el inciso (c), de manera que dispusiese:

"Art. 11. Se considerarán elementos comunes generales del inmueble:

(a) . . . . . . . .

(b) . . . . . . . .

(c) El *vuelo*, los sótanos, azoteas, patios y jardines, salvo disposición o estipulación en contrario.

. . . . . . . ."

■ De haberse convertido en ley dicho proyecto no habría duda que el vuelo, al igual que lo reconocimos en cuanto a la azotea en *Consejo de Titulares* v. *Vargas*, 101 D.P.R. 579 (1973), podría ser objeto de reserva en favor de uno o más apartamientos. Pero ese proyecto "no prosperó", al decir de la recurrente en su alegato. Prosperó un proyecto sustitutivo, el P. de la C. 1862, que se convirtió en la Ley Núm. 157 de 4 de junio de 1976, que sacó el vuelo del inciso (c) y lo colocó en el inciso (a) del Art. 11, precisamente donde, como elemento común, no puede ser objeto de disposición o estipulación en contrario. No podía Costa Linda, Inc., al someter el inmueble al régimen de propiedad horizontal, disponer reserva sobre el vuelo. El vuelo ha de ser un elemento común por mandato de la ley. Cualquier disposición en contrario sería ilegal. Dice al efecto el comentarista A. Ventura-Traveset y González, *Derecho de propiedad horizontal*, 3ra ed., Barcelona, 1976, pág. 194:

"Basta pues que un pacto o acuerdo, esté prohibido por la Ley o que le sea contrario o que esté en contradicción con ella o que la ley no lo permita para que la autonomía de la voluntad se vea limitada."

Lo que aquí resolvemos no está reñido con el Art. 18 de nuestra Ley, 31 L.P.R.A. sec. 1291p, que dice:

"Ningún titular podrá, sin el consentimiento unánime de los otros, construir nuevos pisos, hacer sótanos o excavaciones, o realizar obras que afecten a la seguridad, solidez y conservación del edificio."

Al impedir el Art. 11 que se haga reserva del vuelo en perjuicio de su carácter comunal, no impide que la comunidad lo aproveche mediante el ejercicio de su derecho de sobreelevación en virtud del Art. 18. Ambas disposiciones, lejos de contradecirse, se complementan.

 El vuelo y derecho de sobreelevación no son una y la misma cosa. El vuelo es un elemento del edificio, como lo son las escaleras, los vestíbulos, las paredes, las azoteas, las áreas de estacionamiento de vehículos, etc. Estos elementos son propiedad comunal; algunos susceptibles de reserva o disposición para uso particular, otros no. El vuelo está entre estos últimos por disposición del Art. 11(a). El derecho de sobreelevación es, como dijimos en *Consejo de Titulares* v. *Vargas*, supra, en la pág. 585, el derecho de utilizar el vuelo para elevar la edificación. Y ese derecho también lo reserva nuestra Ley de Propiedad Horizontal a los condómines, como un derecho comunal, del cual pueden ellos disponer solamente por acuerdo unánime conforme al Art. 18. No podría concebirse el derecho de sobreelevación separado del derecho al vuelo. Sería absurdo interpretar que el derecho al vuelo es elemento común, no susceptible de reserva a favor de determinado apartamiento, y que por el contrario pueda disponerse en el título constitutivo que el derecho de sobreelevación sí puede reservarse a favor de un apartamiento en particular.

El concepto de vuelo como elemento común parte del Art. 284 del Código Civil, 31 L.P.R.A. sec. 1115. Batlle Vázquez, *La propiedad de casas por pisos*, 7ma ed., 1973, pág. 103; Ventura-Traveset, *Derecho de propiedad horizontal*, 3ra ed., 1976, pág. 91. Dicho artículo, equivalente al 350 del Código Civil español, dispone:

"El propietario de un terreno es dueño de su superficie y de lo que está debajo de ella y puede hacer en él las obras, plantaciones y excavaciones que le convengan, salvo las servidumbres legalmente establecidas."

Diríase que el vuelo es una proyección vertical de la superficie, que comienza desde el techo del edificio. Es un elemento ideal, intangible, pero tan importante como cualquier otro y más importante que muchos. Hacer reserva del derecho de sobreelevación a favor de un apartamiento es tanto como reservarle a éste un "solar" sobre el techo para edificar. Ese derecho se lo reserva la ley a los condómines, prohibiéndoles disponer de él a no ser por acuerdo unánime de ellos.

La razón de esto la hallamos en la exposición de motivos de la Ley Núm. 157 de 1976, inspirada en la experiencia de casi veinte años de vigencia de la Ley de Propiedad Horizontal, aprobada en 1958.

El informe del Departamento de Asuntos del Consumidor, sometido mientras se consideraba el proyecto que se convirtió en la Ley Núm. 157, señaló que éste responde "al reclamo de miles de ciudadanos que han adquirido apartamientos en inmuebles sometidos al régimen de propiedad horizontal. Alegan estos ciudadanos—continúa dicho informe—que la Ley 104 de 25 de junio de 1958, según enmendada, bajo cuyo régimen se organiza y funciona la llamada propiedad horizontal en Puerto Rico, favorece los intereses del constructor-vendedor de los apartamientos, *cuando permite y autoriza que éste imponga a su antojo y conveniencia en acto unilateral,* todas las condiciones y requisitos en la venta, *y mantenga todavía después de vendidos los apartamientos, pleno control y disfrute de las facilidades, servicios y pertenencias del inmueble,* y además su administración . . .". (Énfasis nuestro.)

De la exposición de motivos de la citada ley, son significativos los siguientes párrafos:

"La experiencia que se ha ido acumulando al amparo de la citada ley permite concluir que, a pesar de los beneficios alcanzados a través del concepto de propiedad horizontal, se hace inminente una revisión de varios aspectos del estatuto *que dificultan la vida en comunidad y afectan adversamente a los*

*adquirentes de apartamientos en inmuebles sometidos a este régimen."*

. . . . . . .

"Existen intereses de índole pública que el Gobierno está obligado a atender con preferente consideración. *Así deben prevenirse posibles abusos contra futuros adquirentes de apartamientos residenciales, que dificulten el logro de la política pública sobre utilización de terrenos del Estado Libre Asociado de Puerto Rico* que se dirige a estimular que las familias puertorriqueñas residan en proyectos multi-familiares. Es necesario brindar igual protección a los ya titulares de apartamientos residenciales a fin de evitar que se perpetúen los abusos cometidos contra éstos en el pasado." *Leyes de Puerto Rico,* 1976, págs. 485 y 486. (Énfasis nuestro.)

En resumen, al enmendar la Ley de Propiedad Horizontal quiso el legislador impedir que el titular de un edificio que lo sujeta al régimen de dicha ley se reservase derechos que pugnarían con los intereses de los condómines, en desventaja para éstos del uso y disfrute de sus apartamientos y los elementos comunes del edificio que les son accesorios. En el caso específico del vuelo, quiso el legislador impedir precisamente lo que Costa Linda, Inc., ha pretendido. Ésta no podía hacer reserva del derecho de sobreelevación que, como parte inseparable del derecho al vuelo, pertenece a los condómines. Son éstos quienes únicamente tienen la facultad de disponer de ese derecho, y en ese caso, mediante acuerdo unánime.

*La nota de la Registradora recurrida será confirmada.*

Los Jueces Asociados Señores Dávila y Martín no intervinieron.