# 2006 DTA 92

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

ÁNGEL R. AMÉZAGA GÓMEZ
Querellante-Recurrido

v.

JUNTA DE DIRECTORES DEL CONDOMINIO SEGOVIA
Querellado-Recurrente

Núm. KLRA-2005-00814

San Juan, Puerto Rico, a 23 de junio de 2006

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
el Juez López Feliciano y la Juez García García

López Feliciano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La recurrente Junta de Directores del Condominio Segovia, en adelante la Junta, nos solicita que revoquemos las resoluciones emitidas y notificadas el 25 de mayo de 2005 y 11 de octubre de 2005, respectivamente, por el Departamento de Asuntos del Consumidor, en adelante el DACO. En su determinación del 25 de mayo de 2005, el DACO ordenó a la Junta tomar las medidas legales necesarias para velar por el uso adecuado de los estacionamientos del Condominio Segovia, incluyendo velar porque cada titular estacionara un solo vehículo dentro de cada espacio de estacionamiento. En la resolución notificada a las partes el 11 de octubre de 2005, el DACO modificó la resolución anterior a los efectos de que ésta sería de exclusiva aplicación a los estacionamientos bajo techo del Condominio.

Con el beneficio de la comparecencia de todas las partes, estamos en posición de disponer del recurso, lo que a continuación hacemos.

I

### Los Hechos e Incidentes Procesales Pertinentes

El Sr. Amézaga Gómez, en adelante Amézaga, es el titular del apartamento PH-2 del Condominio Segovia, ubicado en la Calle Sergio Cuevas Bustamante en San Juan. Amézaga adquirió esta propiedad mediante escritura de compraventa en la que se especificó que al titular del apartamento le correspondían los estacionamientos treinta y cinco y treinta y seis del estacionamiento bajo techo del Condominio.

La escritura matriz del Condominio puntualiza en su inciso cuarto que:

*"Los elementos comunes generales de la propiedad que aquí se someten al régimen de propiedad horizontal son los siguientes:*

*...*

*cc) Área de estacionamiento: Está compuesta por un edificio de estacionamiento que alberga ciento cincuenta y ocho (158) vehículos bajo techo, ciento ochenta y tres (183) estacionamientos descubiertos y cuatro (4) espacios para cuatro trucks, que sumados arrojan un total de trescientos cuarenta y cinco (345) espacios para estacionamientos. El edificio de estacionamiento está localizado en la zona Oeste del terreno, tiene un área de construcción aproximada de cuarenta y nueve mil trescientos sesenta y cinco pies cuadrados, equivalentes a cuatro mil quinientos ochenta y seis metros cuadrados con doce centímetros."*

Amézaga estaba confrontando problemas porque los dueños de otros estacionamientos a su alrededor invadían significativamente los espacios asignados a él. Los residentes se estacionaban encima de las líneas amarillas que delimitan los espacios, haciendo casi imposible su acceso a los mismos. Ante esta situación, acudió mediante carta al Administrador del condominio para que interviniera en el asunto.

A pesar de las gestiones realizadas con el Administrador, la situación continuó, por lo que Amézaga acudió al DACO. Allí presentó una querella, solicitando que se resolviera el asunto, de manera que pudiera utilizar sus espacios de estacionamiento según asignados.

La Junta no compareció a la vista celebrada en el DACO. De esta vista, el DACO emitió una resolución ordenando a la Junta que tomara las medidas legales necesarias para velar por el uso adecuado de los estacionamientos del condominio. También dispuso claramente que *"la Junta deberá velar porque cada titular estacione un sólo vehículo dentro de su estacionamiento, y que los titulares y sus inquilinos no se estacionen por encima de las rayas amarillas que delimitan los respectivos estacionamientos."*

Notificada la Junta de esta resolución, presentó una moción de reconsideración y, al mismo tiempo, comparecieron también algunos titulares que estacionaban dos vehículos en sus espacios de estacionamiento, alegando verse afectados por la resolución sin haber sido citados a la vista administrativa. Así las cosas, el DACO citó a todas las partes a otra vista, en la que las partes se comprometieron a someter estipulaciones por escrito, lo que nunca ocurrió.

La Junta presentó un documento en el que recogió los acuerdos aprobados sin oposición en una asamblea extraordinaria de los titulares celebrada el 21 de agosto de 2005, entre los que se encuentran: (1) que se sigan las medidas del informe pericial presentado el 19 de agosto de 2005 para el uso más eficaz de las áreas comunes; (2) que se continúen utilizando los estacionamientos donde quepan dos automóviles sin estorbar a los vecinos, luego de corregidas las medidas en la vía de rodaje; y (3) que se cumpla con lo mínimo requerido por ley. ■

Presentadas las mociones de reconsideración de algunos titulares, el DACO determinó que la escritura matriz claramente expresaba que sólo puede estacionarse un vehículo dentro de cada uno de los espacios de estacionamiento que comprenden el área bajo techo. Además, añadió que para realizar cualquier enmienda a la escritura matriz se requiere el consentimiento unánime de todos los titulares.

Como parte de la escritura matriz, en el párrafo tercero, se expone que el Condominio Segovia se somete al Régimen de Propiedad Horizontal, que se regulará por las disposiciones de la Ley de Condominios y de cualquier otra ley sobre la materia, así como por el Reglamento de Administración de co-propiedad adoptado, y por todos aquellos acuerdos válidos que en el futuro pueda adoptar el Consejo de Titulares que se organice conforme a dicho Reglamento.

En su resolución en reconsideración, el DACO modificó su determinación sólo a los efectos de excluir los estacionamientos descubiertos, ya que en la escritura matriz no se hace mención de que no se pueda ubicar más de un vehículo por estacionamiento en dicha área.

Además, determinó que de la cláusula vigésimo octava de la escritura matriz se desprende que *"cada apartamento con su espacio de estacionamiento asignado será inscrito como una propiedad individual, capaz de uso independiente debido a que cada uno tiene su propia salida a un área común y a facilidades del proyecto"*.

Inconforme la Junta con la resolución del DACO, acudió ante nos en el presente recurso.

## II
## La Cuestión Planteada

La Junta presenta dos señalamientos de error:

*"Erró el Departamento de Asuntos del Consumidor al ordenar en su resolución del 25 de mayo de 2005 que la Junta de Directores velará porque cada titular estacione un sólo vehículo dentro de su estacionamiento, orden que fue confirmada en la resolución del 11 de octubre de 2005.*

*Erró el Departamento de Asuntos del Consumidor al determinar que son contrarios a la ley los acuerdos tomados en una asamblea extraordinaria el 18 de agosto de 2005, en la cual el Consejo de Titulares acordó por mayoría que se sigan las medidas del informe pericial presentado el 19 de agosto de 2005 para el uso más eficaz de las áreas comunes y que se continúe utilizando los estacionamientos donde quepan dos automóviles fácilmente y sin estorbar a los vecinos, luego de corregidas las medidas en la vía de rodaje y que se cumpla con lo mínimo requerido por ley."*

Ambos errores podrían contraerse a que determinemos si el Consejo de Titulares de un condominio, bajo el

supuesto de ausencia de objeción por parte de sus miembros, puede acordar sin más y sin ninguna otra acción ulterior, que ciertos espacios de estacionamiento diseñados y asignados para un vehículo de motor, puedan ser utilizados para estacionar dos vehículos, pero condicionado a que no estorben los espacios vecinos ni las vías de rodaje del estacionamiento.

III

**El Derecho Aplicable**

-A-

**Las Facultades del DACO**

La Ley Orgánica del DACO, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 L.P.R.A. secs. 341 a 341w, confiere facultad al Secretario del DACO para resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía, y conceder los remedios que sean procedentes conforme al derecho aplicable. Artículo 10-A de la Ley Núm. 5, *supra*, 3 L.P.R.A. sec. 341i-1.

-B-

**Las Fuentes de Derecho en el Régimen de Propiedad Horizontal**

Las fuentes rectoras del Régimen de Propiedad Horizontal son las siguientes:

"...

*1. La Ley de Propiedad Horizontal;*

*2. El Reglamento Sobre Condominios promulgado por el DACO;*

*3. La escritura matriz;*

*4. El Reglamento del condominio en particular; y*

*5. Los acuerdos del Consejo de Titulares.*

*6. La propia Ley dispone en su Artículo 46, § 1293j, que 'las disposiciones de la Ley Hipotecaria y del Reglamento para la Ejecución de la Ley Hipotecaria se considerarán complementarias' a las del Régimen.*

*7. El Artículo 330 del Código Civil, 31 L.P.R.A. § 1275, para los edificios construidos antes de 1958.*

*8. El Código Civil, como fuente supletoria en general".* ■

Dichas fuentes se reconocen en el orden de supremacía y prelación anteriormente expuesto.

-C-

**La Ley de Condominios de Puerto Rico**

En nuestra jurisdicción, el Régimen de Propiedad Horizontal está reglamentado por la Ley de Condominios de Puerto Rico, Ley Núm. 103 de 5 de abril de 2003 (antes conocida como la Ley de Propiedad de Horizontal).

En lo aquí pertinente, como parte de las particularidades de este régimen legal sobre los estacionamientos, la

226

Ley de Condominios, *supra*, establece en el Artículo 14-A, 31 L.P.R.A. 12911-1, sobre el carácter de estos elementos, lo siguiente:

"*Cuando el estacionamiento fuere elemento común, todo titular tendrá derecho a hacer uso de un espacio de estacionamiento con capacidad para acomodar un automóvil por cada apartamiento de que fuere propietario que estuviere ocupado. Ningún titular podrá hacer uso de un espacio de estacionamiento que exceda aquella cabida, si con ello priva a otro titular del disfrute efectivo de tal elemento común. Si el número de espacios de estacionamiento con capacidad para acomodar un automóvil fuere menor que el número de apartamientos y hubiese más titulares disponibles, éstos se sortearán entre los interesados para su uso durante el período de tiempo que disponga el consejo, de forma tal que se garantice el acceso de dichos espacios a todos los interesados.*

*Por acuerdo mayoritario del Consejo de Titulares, podrá autorizarse el estacionamiento de vehículos en las áreas comunes de rodaje para el disfrute de todos los titulares. En caso de que el número de dichos espacios sea menor que el número de titulares interesados en ocuparlos se procederá a sortearlos, conforme se dispone en el párrafo anterior. El consejo determinará las condiciones y requisitos para participar en el sorteo, incluido el cobro de un canon de arrendamiento, si así lo estimare conveniente, y podrá adoptar cualquier otra medida para el mejor uso de esta área de estacionamiento, siempre que con ello no se menoscabe el disfrute o el acceso a los espacios privados.*

*Por acuerdo de las dos terceras partes (2/3) de los titulares que a la vez reúnan las dos terceras partes (2/3) de las participaciones en las áreas comunes del inmueble, se podrán habilitar o construir áreas adicionales de estacionamiento, siempre y cuando con ello no se afecten sustancialmente las áreas verdes, se obtengan los permisos necesarios de las agencias gubernamentales pertinentes y se cumpla con las condiciones establecidas en los incisos (d) y (e) del Artículo 38 de esta Ley. Las áreas así habilitadas podrán constituirse por igual votación como elemento común o como anejos de los apartamientos, en cuyo caso estarán sujetos a lo dispuesto en el Artículo 11(b) de esta Ley.*" (Subrayado nuestro) 31 L.P.R.A. sec. 12911-1.

En el Artículo 2 de la Ley de Condominios, *supra*, se dispone que "*[l]a escritura que establezca el régimen de propiedad horizontal expresará clara y precisamente el destino y uso de toda área comprendida en el inmueble, y, excepto que esta ley autorice lo contrario, una vez fijado dicho destino y uso, sólo podrá ser variado mediante consentimiento unánime de los titulares*". 31 L.P.R.A sec. 1291.

De otra parte, el Artículo 11 de dicha Ley señala que son elementos comunes del inmueble los siguientes:

"*a) Se consideran elementos comunes generales necesarios, no susceptibles y propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa, los siguientes:*

...

*b) Se consideran elementos comunes generales, salvo disposición o estipulación en contrario, los siguientes:*

*1) El terreno, los sótanos, azoteas, patios y jardines.*

*2) Los locales destinados alojamiento de porteros o encargados.*

*3) Las áreas destinadas a estacionamiento.*

*4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes.*

*La adjudicación de las áreas o elementos comunes antes enumerados, requerirá que así se haya dispuesto en la escritura de constitución del régimen o, de realizarse la conversión y transferencia luego de constituido éste, se requerirá el consentimiento unánime de los titulares. La transferencia deberá inscribirse en el Registro de la Propiedad, dejando constancia de los nuevos porcentajes de participación por cada uno de los apartamientos beneficiados.*

*Aun cuando las áreas enumeradas anteriormente bajo este inciso (b) sean susceptibles de aprovechamiento independiente, no podrán constituirse o enajenarse como áreas privadas, sino para el beneficio del Consejo de Titulares o de uno o varios de los titulares de apartamientos o estacionamiento en los condominios exclusivamente residenciales se configurará bien como elemento común, general o limitado, o bien como área privada cuyos espacios y titularidad se adscribirá a los dueños de los apartamientos.*

*Excepto en los condominios exclusivamente comerciales o profesionales, la titularidad sobre los espacios individuales de estacionamiento que constituyan fincas independientes no se tomará en cuenta para la determinación de quórum o de mayoría a base del número de titulares, si bien se podrá computar el por ciento de participación que corresponda a dichos espacios en los elementos comunes, cuando el Reglamento incluya dicha área destinada a estacionamiento se haya configurado en su totalidad cono finca independiente, a su titular le corresponderá un voto, como si se tratara de un apartamiento."* (Subrayado nuestro) 31 L.P.R.A sec. 1291i

**-D-**

## La Escritura Matriz

La Escritura Matriz es el título constitutivo de una propiedad sometida al Régimen de Propiedad Horizontal. Es un estatuto privado que gobierna a los condominios y a sus titulares, que una vez inscrito en el Registro de la Propiedad también obliga a terceros. Es la fuente normativa dentro del régimen a la que hay que acudir para dirimir cualquier conflicto entre titulares. *Consejo de Titulares v. Vargas*, 101 D.P.R. 579 (1973).

Los términos consignados en la escritura matriz gobiernan al régimen, siempre que sus disposiciones no sean contrarias a la ley, la moral o el orden público. *Consejo de Titulares Cond. McKinley Court v. Rullán*, 126 D.P.R. 387 (1990); *Arce v. Caribbean Home Const. Corp.*, 108 D.P.R. 225, 245 (1978); *Consejo de Titulares v. Vargas*, 101 D.P.R. 579 (1973).

En el Artículo cuarto, inciso CC, de la Escritura Matriz del Condominio Segovia, se establece como elemento común general el área de estacionamiento. Se describe dicha área como compuesta de dos partes, a saber: un edificio de estacionamiento bajo techo para 158 vehículos; y 183 estacionamientos en el área descubierta, así como cuatro espacios para estacionamiento de camiones.

Al pasar juicio sobre el alcance del contenido de la Escritura Matriz de un condominio debemos aplicar las mismas reglas para la interpretación de los contratos.

El Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471, dispone en cuanto a la interpretación de los contratos que:

*"Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.*

*Si las palabras parecieron contrarias a la intención evidente de los contratantes, prevalecerán éstas sobre aquéllas."*

Para ello, cuando los términos de un contrato son lo bastante lúcidos como para ser entendidos en un único sentido sin dar lugar a dudas o a diversidad de interpretaciones, los tribunales deben abstenerse de especular sobre las posibles intenciones de las partes contratantes e interpretarlas conforme a la voluntad expresada por éstas al momento del perfeccionamiento del contrato.

En *Cond. Prof. S.J. H.`Centre v. P.R.F., Inc.*, 133 D.P.R. 488 (1993), el Tribunal Supremo estableció expresamente, en el contexto del Régimen de Propiedad Horizontal, que de surgir dudas en cuanto a la especificidad de los usos consignados en la Escritura Matriz, se debe atender a la voluntad o intención de las partes al consignar éstos en la escritura y a la voluntad de las partes al suscribir·los contratos para adquirir los apartamentos en cuestión.

## -E-
## El Consejo de Titulares

El Consejo de Titulares es el cuerpo supremo y deliberativo de un inmueble sometido al régimen de Propiedad Horizontal. Así lo establece el Artículo 38 de la Ley de Condominios, 31 L.P.R.A. sec. 1293b. Conforme al Artículo 2 de dicho estatuto, le corresponde a este organismo dar su consentimiento unánime para variar el destino y uso de toda área comprendida en el inmueble, lo que conlleva incorporar dicha enmienda a la escritura matriz, ya que esta es la fuente vinculante más importante de los condominios luego de la Ley. Godreau, *ob. cit.*, pág. 71.

## -F-
## La Revisión de las Determinaciones de las Agencias Administrativas

Reiteradamente, el Tribunal Supremo de Puerto Rico ha resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son ellas las que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. *Martínez Segarra v. Rosado Santori*, 165 D.P.R. ___ (2005), **2005 J.T.S. 132**; *Otero v. Toyota*, 163 D.P.R. ___ (2005), **2005 J.T.S. 13**; *Rebollo Vda. de Liceaga v. Yiyi Motors*, 161 D.P.R. ___ (2004), **2004 J.T.S. 4**; *Pacheco Torres v. Estancias de Yauco*, 160 D.P.R. ___ (2003), **2003 J.T.S. 148**; *González Santiago v. Fondo del Seguro del Estado*, 118 D.P.R. 11 (1986).

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *P.C.M.E. v. J.C.A.*, 166 D.P.R. ___ (2005), **2006 J.T.S. 7**; *Rebollo Vda. de Liceaga v. Yiyi Motors, supra*. Los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *P.C.M.E. v. J.C.A., supra; Otero v. Toyota, supra; Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors Inc., supra,; Metropolitana S.E. v. A.R.P.E.*, 138 D.P.R. 200, 213 (1995); *Facultad v. Consejo de Educación Superior*, 133 D.P.R. 521, 532 (1993). Como ha definido en diversas ocasiones nuestro más Alto Foro, evidencia sustancial es *"aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"*. *Otero v. Toyota, supra; Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 131 (1998); *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953).

Debido a que las determinaciones del foro administrativo tienen que basarse en evidencia sustancial, la parte que las impugne tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial. *P.C.M.E. v. J.C.A., supra, Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra*. Debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Otero v. Toyota, supra; Rebollo Vda. de*

*Liceaga v. Yiyi Motors, supra.*

Las determinaciones de hechos de organismos y agencias *"tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas"*. *Matos Matos v. Junta Examinadora de Ingenieros*, 165 D.P.R. __ (2005), **2005 J.T.S. 143**; *Otero v. Toyota, supra; Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 210 (1987); *Facultad v. Consejo de Educación Superior, supra.*

El tribunal podrá sustituir el criterio de la agencia por el propio, sólo cuando no pueda hallar una base racional para explicar la decisión administrativa. *Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra.*

Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa, cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, *Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Reyes Salcedo v. Policía de Puerto Rico*, 143 D.P.R. 85 (1997); y (3) cuando ha mediado una actuación irrazonable o ilegal. La cuestión es si la determinación de la agencia es razonable y no si la agencia logró la determinación correcta del hecho o los hechos. *Otero v. Toyota, supra.* Véase, además, Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Bogotá, Colombia, 2da. Ed., 2001, pág. 543.

# IV
## Análisis de la Cuestión Planteada

En el presente caso, la controversia gira en torno a que algunos residentes del Condominio Segovia estacionan dos vehículos en el espacio de estacionamiento dispuesto para un sólo vehículo, afectando de esta manera el acceso de los residentes vecinos a sus espacios de estacionamiento designados.

El recurrido Amézaga expresó en su querella ante el DACO que los dueños de estacionamientos a su alrededor invadían significativamente su espacio, impidiéndole el acceso al mismo. Solicitó al DACO que resolviera el asunto ordenando a los residentes utilizar sus estacionamientos según su destino. DACO determinó que solamente se puede estacionar un vehículo por espacio asignado en el área bajo techo porque así lo establece la escritura matriz.

La Junta, por su parte, indicó que el Consejo de Titulares alegadamente aprobó sin oposición en una asamblea extraordinaria, que se permitiría el estacionamiento de dos vehículos en los espacios en que quepan, sin estorbar a los espacios vecinos.

En el presente caso, el ordenamiento legal es claro en cuanto a las normas que aplicarán a los inmuebles que sean sometidos al Régimen de Propiedad Horizontal.

Como mencionáramos, el inmueble debe ser sometido al régimen mediante una Escritura Matriz que exprese clara y precisamente el uso a que serán destinadas todas las áreas comprendidas en el mismo y, una vez establecido dicho uso, sólo podrá ser variado mediante el consentimiento unánime de los titulares, procediéndose únicamente entonces a enmendar la Escritura Matriz en lo pertinente a dicho consentimiento unánime. Véase Artículo 2 de la Ley de Condominios, *supra*. Además, la Ley de Condominios expresamente indica que cuando los estacionamientos son elementos comunes, cada titular de apartamiento tiene derecho a acomodar un vehículo por espacio de estacionamiento. Véase Artículo 14A, *supra*.

Es importante señalar que aún cuando el Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal y que es integrado por todos los

titulares, sus facultades no son irrestrictas. Véase Artículo 38, de la Ley de Condominios, *supra.*

Tomando en cuenta que la Escritura Matriz es la fuerza vinculante más importante para los condóminos, no podemos atribuirle al Consejo de Titulares más poderes y responsabilidades de las que realmente le corresponden. Por ello es necesario el consentimiento unánime de todos los titulares para variar el uso de los espacios de estacionamiento en el Condominio. Esta norma que no puede ser alterada con meramente el voto del Consejo de Titulares en asamblea. Véase Artículo 2 de la Ley de Condominios, *supra.* Se requiere enmendar la Escritura Matriz a esos efectos, ya que ésta es la fuente a la que hay que acudir para dirimir un conflicto como el que se presenta en el caso que ahora nos ocupa. Véase *Consejo de Titulares v. Vargas, supra.*

De un examen de la Escritura Matriz en el presente caso, se puede apreciar que la cabida de los estacionamientos bajo techo es para 158 vehículos y 183 vehículos que se estacionan en el área descubierta. El documento también expresa claramente que en cuanto a los estacionamientos, siendo elementos comunes generales, se requiere el consentimiento unánime de todos los titulares para variar su uso y destino.

Resulta claro que el propósito al constituir el régimen mediante la Escritura Matriz era un espacio por vehículo en el estacionamiento bajo techo. Esta intención se desprende fácilmente de la cláusula vigésima octava de la Escritura Matriz, donde se refiere *"al apartamiento con su espacio de estacionamiento asignado".* Véase Artículo 1233 del Código Civil, *supra; Cond. Prof. S.J.H. Centre v. P.R.F., Inc., supra.* De otras cláusulas de la escritura matriz también se puede interpretar que al utilizar el término espacio se refiere a uno sólo. Tal es el caso del sub inciso (cc) del inciso cuarto en el que se expresa que hay estacionamiento para 158 vehículos bajo techo, 183 al descubierto y 4 espacios para cuatro *"trucks",* que sumados arrojan un total de 345 espacios para estacionamientos.

Se impone en este caso la clara intención en la Escritura Matriz de proporcionar un espacio por vehículo en el estacionamiento bajo techo. Por tanto, concluimos que el DACO actuó correctamente al determinar que sólo puede estacionarse un vehículo por espacio provisto en el área bajo techo.

La determinación en el presente caso del DACO, agencia con experiencia y conocimiento experto del Régimen de Propiedad Horizontal, es esencialmente razonable y ajustada a la normativa antes expuesta. Véase *P.C.M.E. v. J.C.A., supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra.* Debemos deferencia a la misma. *Martínez Segarra v. Rosado Santori, supra; Otero v. Toyota, supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Pacheco Torres v. Estancias de Yauco, supra; González Santiago v. Fondo del Seguro del Estado, supra.*

De otro lado, la parte recurrente no nos ha demostrado que la evidencia en la que se apoyó el DACO para formular la determinación de la cual se recurre no está sostenida en evidencia sustancial contenida en el expediente administrativo. Véase *P.C.M.E. v. J.C.A., supra; Otero v. Toyota, supra; Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors Inc., supra,; Metropolitana S. E. v. A.R.P.E., supra; Facultad v. Consejo de Educación Superior, supra.*

Procede confirmar las resoluciones del DACO emitidas el 25 de mayo y el 11 de octubre de 2005.

## V

**Disposición del Recurso**

Por los fundamentos antes expuestos, se confirman las Resoluciones recurridas.

Así lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2006 DTA 92**

**1.** Nos llama la atención la alegación que hace la Junta de que se aprobó *"sin oposición"* en el Consejo de Titulares la continuación del uso de un sólo espacio de estacionamiento para estacionar dos vehículos, cuando precisamente el condómino aquí recurrido ha expresado y reiterado su objeción a dicha práctica.

**2.** Godreau, Michel J., *El Condominio*, Editorial Dictum, San Juan P.R., págs. 62-63.