Opinión de conformidad y disidente emitida por el
Juez Asociado Señor Estrella Martínez.
Disiento del análisis de la opinión mayoritaria que al-tera y modifica la designación del vestíbulo de un piso como elemento común limitado sin el consentimiento uná-nime de los titulares. Como resultado, se respalda un cam-bio en el destino y uso asignado en la escritura constitutiva del régimen de propiedad horizontal sin cumplir con el re-quisito de unanimidad de los titulares impuesto por la Ley de Condominios, Ley Núm. 103-2003 (31 L.RR.A. see. 1291 et seq.)
De otra parte, estoy conforme con la decisión de la opi-nión mayoritaria en la que se confirma al Departamento de Asuntos delConsumidor (D.A.Co.) para requerir que el color de las barandas y del techo del balcón del apartamento ubicado en el quinto piso del condominio sea igual al selec-cionado por el Consejo de Titulares para el resto del inmueble.
1 — i
Los hechos del caso ante nuestra consideración constan en la opinión mayoritaria y demuestran que los esposos Richard K. Nobbe y Cristina Batista de Nobbe son dueños de un apartamento ubicado en el quinto piso del condomi-nio Condado Terrace.
*227 Con relación a la controversia ante nos, los esposos No-bbe-Batista cambiaron el color de las barandas y del techo del balcón de su apartamento y removieron la puerta divi-soria del vestíbulo de ese piso, para que el ascensor abriera directamente a su apartamento. Estas situaciones propi-ciaron la convocación de una asamblea extraordinaria el 6 de febrero de 2006. En esta se acordó que los esposos No-bbe-Batista cambiarían el color del techo y de las barandas del balcón de su apartamento para que fuera igual al ele-gido por el resto del condominio. Además, se llevó a vota-ción si los cambios realizados por los esposos Nobbe-Batista en el vestíbulo ubicado en el quinto piso podían mantenerse. Sobre este particular, la minuta refleja que de los nueve titulares hubo siete que votaron en contra.
Inconforme, los esposos Nobbe-Batista presentaron una querella ante D.A.Co. En ésta se limitaron a impugnar los acuerdos alcanzados por la mayoría durante la asamblea celebrada el 6 de febrero de 2006. En lo pertinente, seña-laron que no se les permitió mantener las modificaciones en un área de su uso exclusivo aunque ello no afecta la estructura, fachada ni a los demás titulares del condominio. El 29 de diciembre de 2009, la agencia emitió una resolución en la cual desestimó los reclamos de los esposos Nobbe-Batista en torno a la impugnación del color del techo y las barandas del balcón y a las modificaciones del vestíbulo donde ubica su apartamento. A estos efectos, D.A.Co. dispuso que esos acuerdos requerían la unanimi-dad de los titulares. La consecuencia de la determinación es que los esposos Nobbe-Batista debían cumplir con los acuerdos de la asamblea, por lo que procedía que pintaran el plafón del techo y las barandas de su balcón igual al conjunto general del edificio. Asimismo, debían restituir el vestíbulo del quinto piso del condominio a su estado original, según consta en la escritura matriz y los planos del edificio.
*228 Los esposos Nobbe-Batista acudieron ante el Tribunal de Apelaciones. En esencia, adujeron que D.A.Co. erró al concluir que se apropiaron del vestíbulo de su piso y que las modificaciones realizadas al vestíbulo constituyen un cambio de fachada. El 16 de agosto de 2010, el foro inter-medio emitió una sentencia en la que revocó a D.A.Co. Res-pecto al vestíbulo, el Tribunal de Apelaciones dirimió que su uso no ha variado debido a que sigue siendo un área común de uso limitado al apartamento ubicado en el quinto piso del condominio. El foro intermedio entendió que ha variado la intensidad en el uso del área, porque ahora está controlada por una llave que solo poseen los esposos Nobbe-Batista.
De esta determinación, la Junta de Directores presentó un recurso de certiorari ante este Tribunal. Entre los erro-res señalados, cuestionó el que el Tribunal de Apelaciones ignoró la escritura matriz que define y establece como un elemento común limitado el área del vestíbulo del quinto piso y las acciones de los esposos Nobbe-Batista para pri-vatizarlo al colocar un portón de reja que limita el acceso a esa área.
Este Tribunal correctamente confirmó a D.A.Co., con re-lación a que el color de las barandas y del techo del balcón del apartamento de los esposos Nobbe-Batista, que debía ser igual al resto del inmueble. No obstante, determinó que el vestíbulo del quinto piso es privativo, por lo que los es-posos Nobbe-Batista podían colocar el portón de reja en el marco del elevador que da entrada al vestíbulo en cuestión. De esta forma, y en cuanto a este aspecto, la mayoría del Tribunal confirmó la sentencia del Tribunal de Apelaciones que dejó sin efecto la decisión de D.A.Co. que ordenaba a los esposos Nobbe-Batista devolver el vestíbulo del aparta-mento a su estado original. No avalamos esta última actuación.
*229 I — I
El fundamento para nuestro disenso responde a la na-turaleza constitutiva del régimen de propiedad horizontal y a lo dispuesto en la Ley de Condominios para variar el uso y destino de las áreas comprendidas en el inmueble. Veamos.
Reiteradamente hemos reconocido que una de las carac-terísticas del régimen de propiedad horizontal consiste en su naturaleza de carácter voluntario, constitutiva vía la inscripción y catastral. Véanse: Arts. 22-33 de la Ley de Condominios, 31 L.RR.A. secs. 1292-1292k; Bravman, González v. Consejo de Titulares, 183 D.RR. 830 (2011); Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538, 553 (1991); García Larrinua v. Lichtig, 118 D.P.R. 120, 131 — 133 (1986); Arce v. Caribbean Home Const., Corp., 108 D.P.R. 225, 245, 257-258 (1978); Consejo de Titulares v. Vargas, 101 D.P.R. 579, 582-583 (1973).
La naturaleza constitutiva del régimen de propiedad horizontal recogida en nuestra Ley de Condominios no cons-tituye un simple proceso de formalidad. El propio estatuto exige una expresión de voluntad declarativa dirigida a un fin concreto. A estos fines, se ha expresado que el carácter del título constitutivo está determinado por el citado Art. 2 de la Ley de Condominios al exponer con claridad que los efectos típicos y propios de la horizontalidad se alcanzan con la documentación en escritura pública y su ulterior registración. Es a partir del acto constitutivo que se reco-noce al titular el ejercicio de los derechos característicos del régimen especial, quedando sometido a las obligaciones inherentes a la horizontalidad. E. Vázquez Bote, Prolegómenos al régimen de la horizontalidad en el derecho puertorriqueño, 16 Rev. Der. Pur., 301, 340-341 (1976-1977). Como consecuencia, lo consignado en la escritura matriz gobierna el régimen de horizontalidad y es la fuente a cu-
*230 yas disposiciones debemos acudir para dirimir cualquier conflicto. Véanse: Consejo Tit. Cond. McKinley Court v. Rullán, 126 D.P.R. 387, 394 (1990); Arce v. Caribbean Home Const. Corp., supra, pág. 245.
Uno de los efectos que conlleva las características del régimen de horizontalidad es que los titulares se adhieren y obligan a lo dispuesto en la escritura matriz, ya sea cuando someten el inmueble o cuando adquieren un apartamento en este. Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 234 (2001); Cond. Prof. S.J. H. Centre v. P.R.F., Inc., 133 D.P.R. 488, 501-502 (1993); Consejo de Titulares v. Vargas, supra, págs. 582-583.
La Ley de Condominios requiere que la escritura pú-blica se inscriba en el Registro de la Propiedad con las constancias de las cabidas de cada apartamento, piezas de que conste, puerta principal de entrada y lugar con el cual inmediatamente comunique, además, de todos los datos necesarios para su identificación. A su vez, el documento público hace constar la superficie de la totalidad de los apartamentos para así fijar los gastos, las ganancias y los derechos en los elementos comunes. En la escritura matriz se establece el destino de los elementos que configuran el régimen. Conjuntamente con ésta se certifican los planos sometidos al Registro de la Propiedad. Véanse los Arts. 2 y 22-25 de la Ley de Condominios, 31 L.P.R.A. sees. 1291 y 1292-1292c. Tanto la escritura matriz como los planos pre-sentados al Registro de la Propiedad consagran gráfica-mente los derechos de los interesados y extienden al ám-bito de la fe pública registral las características materiales del inmueble según fueron representadas. Arce v. Caribbean Home Const. Corp., supra, págs. 257-258.
La Ley de Condominios ordena que el destino de sus componentes y las limitaciones de uso de las áreas del con-dominio se plasmen en los documentos constitutivos del régimen. Ello hace indispensable examinar la escritura matriz para determinar el uso al que se han destinado las *231 áreas que conforman el régimen. La ley específicamente establece que la escritura matriz del condominio precisa el destino de toda área del inmueble y la forma como esta puede variarse. Rivera Rodríguez v. Junta Dir. I y II, 173 D.P.R. 475, 483 (2008). Esta fijación del uso o destino co-rrespondiente constituye una limitación de las facultades inherentes al uso y disfrute que se le impone al titular individual en interés de la colectividad. E. Vázquez Bote, Derecho Civil de Puerto Rico, San Juan, Ed. Jurídicas, 1974, Vol. II, pág. 275; Soto Vázquez v. Vázquez Torres, 138 D.P.R. 282, 290 (1995). La Ley de Condominios dispone claramente que “una vez fijado dicho destino y uso sólo podrá ser variado mediante el consentimiento unánime de los titulares”. (Énfasis suplido). Art. 2 de la Ley de Condo-minios, supra. Véase Consejo Tit. C. Parkside v. MGIC. Fin. Corp., supra, pág. 553.
El requisito de la unanimidad contemplado en la Ley de Condominios responde a que la sana convivencia en el ré-gimen es esencial para su preservación, por lo que el sis-tema de horizontalidad en esencia está vinculado al deseo colectivo de todos sus titulares. Rivera Rodríguez v. Junta Dir. I y II, supra, págs. 490-491. Es la voluntad unánime de los titulares para ceder o variar el uso de los elementos y permitir que estos se dediquen al disfrute exclusivo y privado de uno o varios apartamentos la que el legislador preservó en la Ley de Condominios. Permitir el cambio en el uso y destino de los elementos sin cumplir con el es-quema expuesto —ordenado por mandato legislativo— trastoca la naturaleza de la propiedad horizontal al omitir o evadir el requisito de unanimidad. Véanse: Rivera Rodríguez v. Junta Dir. I y II, supra, págs. 491-492; Serrano Muñoz v. Auxilio Mutuo, 171 D.P.R. 717, 729 (2007); Consejo Tit. C. Parkside v. MGIC Fin. Corp., supra, pág. 553.
La clasificación de los elementos comunes surge de la Ley de Condominios. Ésta los cataloga en dos tipos: gene-rales y limitados. El estatuto establece que los elementos *232 comunes no podrán ser objeto de acción de división de la comunidad. 31 L.P.R.A. sec. 1291k. En lo pertinente, la Ley de Condominios define los elementos comunes limitados de la forma siguiente:
También serán considerados elementos comunes, pero con carácter limitado, siempre que así se acuerde expresamente por la totalidad de los titulares del inmueble, aquellos que se des-tinen al servicio de cierto número de apartamientos con exclu-sión de los demás, tales como pasillos, escaleras y ascensores especiales, servicios sanitarios comunes a los apartamientos de un mismo piso y otros análogos. (Énfasis suplido). 31 L.P.R.A. sec. 1291j.
De lo expuesto, surge que los elementos comunes limi-tados son elementos comunes atados a la voluntad mani-fiesta unánimemente por los titulares que restringieron el disfrute de estos a beneficio de ciertos titulares. El mante-nimiento y la conservación de los elementos comunes limi-tados corresponden a los titulares a los que fueron destinados. Art. 13 de la Ley de Condominios, 31 L.P.R.A. sec. 1291k. Ello es cónsono con el principio que recoge la Ley de Condominios sobre la voluntariedad. En esta se re-conoce que la designación de los elementos responderá a la disposición o estipulación que estimen los integrantes del régimen. A pesar de ello, y en aras de mantener la viabili-dad del sistema, el estatuto dispone específicamente las actuaciones que están vedadas a los titulares independien-temente de su voluntad. Véase Art. 11 de la Ley de Condo-minios, 31 L.P.R.A. sec. 1291L
La opinión mayoritaria descansa su dictamen en la de-finición general que contempla la Ley de Condominios con relación a los elementos comunes de carácter limitado y las expresiones que el profesor M.J. Godreau realiza en su li-bro La nueva Ley de Condominios, 2da ed., San Juan, Ed. Dictum, 2003, pág. 57. El profesor Godreau sostiene que existen instancias en las que se catalogan erróneamente áreas para el uso exclusivo de un apartamento como un elemento común limitado. Así, razona que esa delimitación *233 es incorrecta y que el disfrute por un titular único de un área equivale a que esta no es común, sino privativa de ese apartamento. Sus expresiones se limitan a señalar que tales áreas deberían considerarse como privativas del apar-tamento sin expresar cómo se haría una corrección a lo que él considera un catálogo erróneo en la escritura matriz. En el caso de marras, la solución que propone la mayoría de este Tribunal es dictaminar que el área en cuestión es pri-vativa de los esposos Nobbe-Batista por razón de que esta no constituye un elemento común limitado, porque solo aprovecha a los titulares de ese apartamento. Diferimos de tal tesis.
Como expresamos, la Ley de Condominios dispone que los elementos comunes limitados constituyen elementos co-munes cuyo uso fue restringido a cierto número de aparta-mentos por voluntad expresa de todos los titulares. A base de ello no podemos colegir que el hecho aislado de que estos se hayan destinado, o renunciado su disfrute, para el be-neficio exclusivo de un solo apartamento transforme su na-turaleza de elemento común a privativo. Nótese que el ré-gimen de propiedad horizontal responde a una declaración concreta de la voluntad de todos los titulares que lo confor-man recogida en su escritura constitutiva. A estos efectos, los titulares no tuvieron objeción en que el elemento común fuera utilizado por un titular. Sin embargo, ello por sí solo, no significa ni convierte ese elemento común en privativo. Mucho menos podemos inferir que los titulares avalan tal cambio. La decisión que hoy toma la mayoría de este Tribunal abre la puerta a reclamaciones de todo tipo relacio-nadas con que la designación realizada en la escritura es errónea o no corresponde a la realidad, so pretexto de cam-biar el uso y destino adscrito a esta sin el consentimiento de todos los titulares. Recordemos que una vez fijado ese destino y uso solo puede ser modificado mediante el con-sentimiento unánime de los titulares. Art. 2 de la Ley de Condominios, supra.
*234 Al revisar la Ley de Condominios no encontramos impe-dimento alguno para que por medio de la voluntad de todos los titulares se destine un elemento común en beneficio de un solo apartamento. Tampoco existe, como ha expresado el profesor Godreau, una razón de política pública o que viole el sentido de la horizontalidad o el espíritu de nuestra ley en contra de este tipo de acuerdo unánime. Tal es la importancia de la voluntad de los titulares en el régimen de horizontalidad que el propio profesor Godreau ha mani-festado que “después de todo no debe olvidarse que los con-dominios son propiedad privada y que la intervención es-tatal debería restringirse al mínimo necesario para reglamentar el aspecto ineludible de la convivencia”. M.J. Godreau, La privatización de los elementos comunes en los condominios: reflexiones en torno a posibles enmiendas la Ley de Propiedad Horizontal, 66 Rev. Jur. U.P.R. 149, 163 (1996).
Ante esa realidad, no vemos justificación para que la mayoría realice una intervención judicial que omita las disposiciones contenidas en la Ley de Condominios para variar el uso del elemento que nos ocupa. Máxime cuando abre las puertas a validar y respaldar las acciones ejerci-das por titulares que para su beneficio exclusivo en contra de sus propios actos y obligaciones pretenden obviar las constancias y los deberes que adquirieron al formar parte del régimen y que constan en la escritura matriz, los pla-nos, la fe pública registral y la voluntad de los cotitulares del régimen.
III
En el caso ante nuestra consideración la escritura ma-triz del condominio dispone que los pisos tercero al quinto consisten de un apartamento de cuatro habitaciones con tres baños completos, espacio para armario, pórtico, te-rraza y cocina equipada. Además, establece específicamente *235 que existe un vestíbulo que da acceso a la entrada del ele-vador, las escaleras, el armario de mantenimiento y los incineradores. Esta dispone:
Typical floor plan (level three (3) to five: These three levels provide one (1) four-bedrooms apartment each, with three (3) complete bathrooms, ample closet space, porch, terrace, and fully equipped kitchen with built-in appliances. The lobby contains the elevator opening, the stairways, a janitorial closet and the incinerator. (Enfasis suplido). Apéndice del Certiorari, pág. 347.
A su vez, el apartamento de los esposos Nobbe-Batista está delimitado por la escritura matriz y los planos presen-tados al Registro de la Propiedad. Particularmente, el apartamento posee linderos con el área del vestíbulo cuyo uso según consta en las instancias del Registro, los planos y la escritura matriz corresponde a un elemento común limitado. De ello, nuevamente, surge que en esa área se encuentran las escaleras y el hueco de los incineradores. La escritura matriz delimita los linderos del apartamento de la forma siguiente:
-----NORTH: Eight point Fifty (8.50) lineal feet equivalent to Two point Five Hundred Ninety One (2.591) lineal meters with common elements of the building and proper elements of the apartment such as concrete balcony wall separating it from the exterior space and Twenty Two point Fifty Eight (22.58) lineal feet equivalent to Six point Eight Hundred Eighty Two (6.882) lineal meters with common elements of the apartment such as concrete load bearing walls, block partitions and columns separating it from the restricted common lobby the stairways and the incinerators shaft.
-----SOUTH: Sixty Six point Seventy Five (66.75) lineal feet equivalent to Twenty point Three Hundred Forty Six (20.346) lineal meters with common elements of the building and proper elements of the apartment such as concrete load bearing walls, columns, block partitions windows separating it from the exterior space. There are two terraces on this boundary with doors providing access from the exterior space, and Twelve point Eighty Three (12.83) lineal feet equivalent to Three point Nine Hundred Eleven (3.911) lineal meters with common elements of the building and proper elements of the *236 apartment such as concrete load bearing walls separating it from common elements of the building namely the elevators shaft and service door of the apartment separating it from and providing access to the restricted common lobby of the respective floor.
-----EAST: One Hundred Thirteen point Twenty Fice (113.25) lineal feet equivalent to Thirty Four Point Five Hundred Nineteen (34.519) lineal meters with common elements of the building and proper elements of the apartment such as columns, concrete loadbearing walls, block partitions and windows separating it from the exterior space and facing McLeary Avenue. There are three (3) balconies and One (1) terrace on this boundary with door providing access from the inside of the apartment.
-----WEST: Eighty Two point Eighty Three (82.83) lineal feet equivalent to Twenty point Two Hundred Forty Seven (25.247) lineal meters with common elements of the building and proper elements of the apartment such as concrete walls separating it from exterior space. This boundary consists of two (2) terraces that run alongside the boundary and Sixteen (16) lineal feet equivalent to Four point Eight Hundred Seventy Seven (4.877) lineal meters with common elements of the building and proper elements of the apartment such as incinerators shaft, stairways and the main entrance door to the apartment separating it from and providing access to the restricted common lobby of the respective floor. (Enfasis suplido). Apéndice del Certiorari, pág. 356-357.
A su vez, la escritura matriz del condominio establece que el vestíbulo es un elemento común limitado al estable-cer como sigue:
COMMON AREAS AND FACILITIES
-----(e) The following facilities located in each one of the six (6) upper floors are RESTRICTED COMMON AREAS AND FACILITIES restricted to the apartment units of each respective floor:-----------------------------------------------------------------------------------------(1) A lobby providing access to the elevator and to the stairway from or to the apartment units on the respective floor. Apéndice del certiorari, pág. 361.
Lo expuesto refleja que no existe divergencia entre las constancias que hace la escritura matriz respecto a las li-mitaciones del apartamento y el vestíbulo como un ele- *237 mentó común limitado. De igual forma, resalta que el área del vestíbulo contiene y da acceso a otros elementos impor-tantísimos para la seguridad del condominio como lo son las escaleras del edificio. A su vez, ubica el armario del área de mantenimiento y el hueco que da hacia los incineradores.
Los esposos Nobbe-Batista conocían y se obligaron al régimen una vez advinieron como titulares del aparta-mento del quinto piso. Tanto es así que, conscientes de ello, sometieron ante los demás titulares los cambios realizados para su aprobación. Celebrada la asamblea a tales efectos, los titulares no consintieron unánimemente. En ese mo-mento, los esposos Nobbe-Batista impugnaron el acuerdo alcanzado por entender que se debieron mantener las modificaciones. En ningún momento reclamaron que el vestíbulo les pertenecía privativamente. Su interpelación consistió en que los cambios en nada afectaban a los demás titulares, ya que el uso del área es exclusivo de ellos.
La mayoría de este Tribunal juzgó que el área en cues-tión es privativa solo porque beneficia a uno de los titulares. Es nuestra posición que ello es contrario a la Ley de Condominios. Con ello se avala el cambio del destino y uso asignado en la escritura matriz y los planos presenta-dos ante el Registro de la Propiedad sin cumplir con el requisito de unanimidad dispuesto en la Ley de Condominios. Más aún, se le permite a los esposos Nobbe-Batista adquirir sobre un elemento común de carácter li-mitado una titularidad que no les pertenece, sin considerar que estos se obligaron a cumplir con el régimen de propie-dad horizontal una vez advinieron en titulares de su apartamento.
Es nuestro criterio que la totalidad de los titulares ads-critos al régimen de propiedad horizontal están facultados para destinar un elemento común al disfrute de un solo titular sin que con ello se entienda que éste cambió su na-turaleza de elemento común a privativo. Por lo tanto, no *238 vemos razón alguna para variar ello sin el consentimiento de todos los titulares conforme dispone el Art. 2 de la Ley de Condominios, supra.
De otra parte, nos preocupa grandemente que las modi-ficaciones realizadas por los esposos Nobbe-Batista tienen el efecto de privatizar elementos comunes como son las es-caleras, los incineradores y el armario de mantenimiento ubicados en el vestíbulo. Sobre todo, elementos que contri-buyen a la seguridad del condominio. Recordemos que en De la Cruz v. Toro Sintes, 112 D.RR. 650 (1982), este Tribunal adjudicó una controversia en la cual al igual que en el caso ante nos al constituirse el condominio según el ré-gimen de propiedad horizontal se reservó el uso exclusivo de la azotea al titular de un determinado apartamento. Allí reiteramos la obligación de los adquirientes de un condo-minio por el régimen de propiedad horizontal de acatar lo dispuesto en la escritura de constitución como pacto al cual se adhieren. íd., pág. 657. Sin embargo, expresamos que ese derecho de uso exclusivo no implica conceder al titular de ese apartamento un derecho absoluto e irrestricto en perjuicio del bienestar y seguridad de todos los condominos. Impedir el acceso a los pasillos, las escaleras y los ascensores del edificio es contrario a la seguridad de los ocupantes del condominio. Id., pág. 658.
Al ubicar un portón en el área del ascensor, los esposos Nobbe-Batista actúan contrario a las obligaciones que ad-quirieron conforme surgen de las constancias del Registro de la Propiedad e impiden el acceso a otros elementos co-munes que se encuentran en el vestíbulo del quinto piso. Incluso imposibilitan el acceso a las escaleras ubicadas en el vestíbulo atentando contra la seguridad del resto de los titulares.
Recordemos que la propiedad horizontal fomenta y está dirigida a estimular la utilización de terrenos y construc-ción en Puerto Rico. La interpretación de la Ley de Condo-minios debe responder a la consecución de esa política pú- *239 blica, por lo que debe ajustarse a la esencia de la horizon-talidad: la coexistencia de diversos pisos de dominio exclusivo con la participación inescapable de ciertos elementos. Le corresponde a este Tribunal velar y encau-sar las controversias jurídicas en torno a la Ley de Condo-minios de forma tal que no se convierta en un “nido de conflictos que amarguen la realización del ideal del hogar propio”. 10 (T. 3) Diario de Sesiones de la Asamblea Legis-lativa (Cámara), pág. 1574 (1958).
IV
Por los argumentos expresados, disiento respetuosa-mente de la opinión mayoritaria y la sentencia emitida por el Tribunal, en cuanto al dictamen de que el área del ves-tíbulo es privativa de los esposos Nobbe-Batista. En conse-cuencia, ordenaría a los esposos Nobbe-Batista a restituir el vestíbulo del quinto piso a su estado original.