El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
En esta ocasión nos corresponde determinar, primera-mente, si los titulares de un inmueble sometido al régimen de propiedad horizontal con anterioridad a la aprobación de la Ley Núm. 157 de 4 de junio de 1976 (31 L.P.R.A. sec. 1291), deben contar con una mayoría de dos terceras par-tes, que a su vez representen las dos terceras partes del valor en los elementos comunes, para cambiar el cómputo para calcular el porcentaje de participación sobre los ele-mentos comunes del inmueble. Asimismo, debemos resol *390 ver si un área de la azotea de un apartamento “penthouse” (PH) es un anejo y, por lo tanto, debe ser excluida al com-putar el porciento de participación de esa propiedad en los elementos comunes. Ello cuando se modifica el cálculo del porcentaje de participación sobre los elementos comunes del criterio de valor de la propiedad al criterio de medida superficial, posterior a la enmienda realizada por la Ley Núm. 281-2008 (31 L.P.R.A. sec. 1291) al Art. 3 de la Ley Núm. 103-2003, conocida como la Ley de Condominios, 31 L.PR.A. sec. 1291a (Ley de Condominios). Para ese come-tido, es preciso evaluar el articulado estatutario que rige la referida norma vis-á-vis la doctrina interpretativa de lo que constituye un elemento privado y un anejo.
Así, con el propósito de elaborar sobre ese análisis y atender adecuadamente el recurso de autos, haremos refe-rencia al trasfondo fáctico y un cuidadoso estudio de la prueba presentada.
I
El 2 de diciembre de 2009, el Consejo de Titulares (Con-sejo) del condominio El Campeador (Condominio) celebró una Asamblea Extraordinaria (Asamblea), a la cual asistió el 87.58% de los titulares de los apartamentos.(1) Con el voto de todos los presentes, se decidió cambiar la fórmula del porcentaje de participación sobre los gastos comunales.(2) En síntesis, se resolvió que la participación que corresponde a cada apartamento ya no se calcularía utilizando el valor de estos, sino a partir de su medida *391 superficial(3) En consecuencia, la aprobación del nuevo cómputo resultó en un aumento en la cuota de manteni-miento del apartamento PH de $699 a $1,370 mensuales, cantidad que, según se dispuso, debería ser satisfecha a partir de enero de 2010.
Inconforme con la decisión del Consejo, la Sra. Sylvia Trigo Margarida (señora Trigo Margarida o recurrida)(4) titular del apartamento PH, se comunicó con la adminis-tradora del Condominio para impugnar ante la Junta de Directores (Junta) la nueva cuota por considerarla abusiva e ilegal(5) Sin embargo, al no recibir respuesta, el 13 de mayo de 2010 la recurrida presentó una querella ante el Departamento de Asuntos del Consumidor (DACo). En esencia, la recurrida adujo ante la agencia administrativa que el aumento en su cuota de mantenimiento fue ilegal(6) Asimismo, argüyó que el cálculo que incrementó su cuota de mantenimiento era contrario a lo dispuesto en el Art. 3 de la Ley de Condominios, Ley Núm. 103-2003 (31 L.P.R.A. sec. 1291a) (Art. 3), porque consideró la superficie total del apartamento, incluso la azotea(7) Objetó, además, el pro-ceso de votación, ya que aunque la asamblea se constituyó con un quorum de 87.58 por ciento de los propietarios que componen el Consejo(8) y se obtuvo el voto unánime de los *392 allí presentes, un cambio de esta naturaleza requería el voto unánime de todos los titulares del Condominio.(9)
Así las cosas, el 14 de julio de 2010, la Junta contestó la querella y alegó que el aumento en la cuota de manteni-miento es cónsona con las disposiciones de la Ley de Condominios. Para sustentar su posición, explicó que la cuota de mantenimiento establecida antes de los cambios aprobados por la Asamblea se basaba en el valor de la propiedad. De esa forma, expresó que se modificó la cuota de mantenimiento para que se computara a partir del área superficial de cada apartamento y así obedecer a lo dis-puesto en el Art. 8, según enmendado por la Ley Núm. 157, supra, 31 L.P.R.A. sec. 129If.
La vista administrativa fue pautada para el 5 de agosto de 2010. Subsiguientemente, el 25 de octubre de ese mismo año, DACo emitió una resolución para desestimar la que-rella de la señora Trigo Margarida. En sus conclusiones de derecho, la agencia determinó que la escritura matriz del Condominio establece que el área de terraza, cuarto para acondicionamiento de aire central y clóset ubicada en la azotea del PH le pertenece a esa propiedad. Por lo tanto, razonó que el cambio en el cómputo de la cuota de mante-nimiento fue conforme a derecho. Concretamente, tras analizar el Art. 3 de la Ley de Condominios, enmendado por la Ley Núm. 281-2008, supra, así como el Art. 8, según enmendado por la Ley Núm. 157, supra, determinó que el área de la terraza, cuarto de acondicionamiento y clóset del apartamento PH no constituía automáticamente un anejo según los parámetros del Art. 3. Asimismo, DACo resolvió que lo establecido en el Art. 8 en relación con la determi-nación de la participación sobre los elementos comunes a base del área superficial del apartamento aplicaba a la controversia presentada por la señora Trigo Margarida. En *393 consecuencia, el 1 de noviembre de 2010, la recurrida pre-sentó una moción de reconsideración, la cual fue denegada.
Insatisfecha con el proceder del foro administrativo, la señora Trigo Margarida recurrió al foro apelativo intermedio. Así, mediante sentencia emitida el 31 de mayo de 2011, el foro a quo revocó el dictamen de DACo. Este, al analizar el Art. 3 de la Ley de Condominios, concluyó que la Junta puede cambiar, en cualquier momento, el porcen-taje de participación de los apartamentos comunales, pero debe contar primeramente con la aprobación unánime de los titulares.
No conteste con la decisión del Tribunal de Apelaciones, la Junta acude ante nos mediante un recurso de certiorari y señala los errores siguientes:
Erró el Tribunal de Apelaciones al revocar la determinación de DACO, al concluir que la Ley Núm. 281 es aplicable al caso de autos, interpretando así que el área aquí en controversia es un “anejo” de los exceptuados del cálculo para computar el por-ciento de participación de los elementos comunes.
Erró el Tribunal de Apelaciones al aplicar la Ley Núm. 281 a la controversia de autos, determinando así que se requería unanimidad para adoptar el cambio de fórmula para computar el porcentaje de participación de los apartamentos en los gas-tos comunales, cuando es la Ley Núm. 157 del 4 de junio [de] 1976 la aplicable a lo referente a la votación para dicho cambio. Certiorari, pág. 7.
Atendido el Certiorari, el 18 de noviembre de 2011 ex-pedimos el auto solicitado. Así, pues, procedemos a resolver.
II
A. Previo al análisis de las disposiciones del esquema de propiedad horizontal que debemos atender, es preciso recordar que “ ‘las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte *394 que las impugna no produzca suficiente evidencia para de-rrotarlas’ ”. Batista, Nobbe v. Jta. Directores, 185 D.P.R. 206, 215 (2012), citando a Calderón Otero v. C.F.S.E., 181 D.P.R. 386, 395-396 (2011). Tal deferencia judicial res-ponde a la “experiencia y al conocimiento especializado atribuible a los organismos gubernamentales”. DACo v. AFSCME, 185 D.P.R. 1, 26 (2012).
En atención a esa deferencia, hemos establecido que al revisar una decisión administrativa, el criterio rector debe ser la razonabilidad. Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004). Es decir, cuando evaluamos una determinación administrativa, corresponde verificar si la agencia actuó arbitraria o irrazonablemente, de forma que haya incurrido en un abuso de discreción. Para realizar tal análisis, resulta necesario auscultar si a las determinaciones de hecho en la decisión de la agencia las sostiene evidencia sustancial que suija del expediente del caso. Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485 (2011). No obstante, las determinaciones de derecho se revisarán en toda su extensión. 3 L.P.R.A. sec. 2175.
Es importante reiterar que la presunción de corrección de las decisiones administrativas cede cuando el organismo administrativo desobedece el mandato legislativo pautado en una ley. Por tal razón, cuando una agencia interpreta un estatuto y el resultado es incompatible o contrario al propósito de la legislación aprobada, el criterio administrativo no podrá prevalecer. DACo v. AFSCME, supra.
Por otra parte, en el contexto de la exégesis de la intención legislativa compete a los tribunales dar a toda ley la interpretación que mejor adelante sus propósitos. En este campo, es norma reiterada que “[c]uando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”. Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. *395 De acuerdo con ese mandato, es imperativo “remitirnos al texto de la ley, pues cuando el legislador se ha manifestado en lenguaje claro e inequvoco, el texto de la ley es la expre-sin por excelencia de toda intencin legislativa”. (Enfasis suprimido). Romero Barceló v. E.L.A., 169 D.P.R. 460, 476-477 (2006).
Igualmente, “[r]esulta necesario que en nuestra interpretación [se armonicen], hasta donde sea posible, todas las disposiciones de la ley con el propósito de lograr una interpretación integrada, lógica y razonable de la intención legislativa”. Matos v. Junta Examinadora, 165 D.P.R. 741, 748-749 (2005). Para realizar tal encomienda, las disposiciones de una ley se deben interpretar en con-junto, considerando todo su contexto. Romero Barceló v. E.L.A., supra. Consecuentemente, cuando se trata de una enmienda a una parte de una ley que deja inalterada el resto de esta, ambos preceptos se deben dilucidar en con-junto, tratando de armonizarlas. Departamento Hacienda v. Telefónica, 164 D.P.R. 195 (2005). Empero, en el caso de que los preceptos legales sean antagónicos, deberá preva-lecer la última voluntad legislativa que es la que se expone en la ley más reciente. Pérez Vega v. Tribunal Superior, 93 D.P.R. 749, 756 (1966).
Delimitados los contornos del principio de revisión judicial de las decisiones de organismos administrativos, así como los de la interpretación de la intención legislativa, pasemos a elaborar el marco jurídico relacionado con la Ley de Condominios que permea la controversia que esta-mos dilucidando.
B. En el esquema del sistema de horizontalidad, la escritura matriz constituye la “fuente vinculante más importante para los condominos, luego de la Ley”. M.J. Godreau, El Condominio: el régimen de propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, .1992, pág. 71. De hecho, la escritura matriz es un documento privado de relevancia tal, que una vez inscrita en el Registro de la Pro- *396 piedad, gobierna a los condominos y obliga a terceros. Bravman, González v. Consejo Titulares, 183 D.P.R.. 827 (2011); Consejo de Titulares v. Vargas, 101 D.P.R. 579 (1973). Por lo tanto, es necesario acudir a sus disposiciones en caso de cualquier conflicto relacionado con los pormenores de la administración y el manejo de los asuntos de la propiedad sometida al régimen. Bravman, González v. Consejo Titulares, supra.
Es en la escritura matriz donde se precisa el uso para el cual “será destinada toda área comprendida en el inmueble, y una vez fijado dicho uso sólo podrá ser variado mediante el consentimiento unánime de los titulares”. Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291. Asimismo, la Ley de Condominios requiere que en la escritura matriz se describa cada apartamento y número con expresión de sus medidas, piezas de las que conste, puerta principal de entrada, lugar con el cual comunique inmediatamente y demás datos necesarios para su identificación. Art. 22 (31 L.P.R.A. sec. 1292); Bravman, González v. Consejo Titulares, supra. A su vez, es necesario que en la escritura conste la superficie del total de los apartamentos, así como de cada apartamento individualmente, para que se fije, de acuerdo con estas medidas, el porcentaje de los gastos, las ganancias y los derechos en los elementos comunes. Art. 23 (31 L.P.R.A. sec. 1292a).
C. Lo que constituye un área privativa para calcular el área superficial de un apartamento, para determinar, a su vez, la participación sobre los elementos comunes y establecer la cuota de mantenimiento, está regulado principalmente por lo dispuesto en los citados Arts. 3 y 8 de la Ley de Condominios. Empero, la delimitación del área superficial que compone el apartamento ha confundido a desarrolladores, notarios, registradores de la propiedad y al público en general. Véase Exposición de Motivos de la Ley Núm. 281-2008, supra. Por tal razón, nuestra Asamblea Legislativa entendió que era necesario enmendar el *397 Art. 3 para atender dicha preocupación y aclarar que la medida superficial de las áreas que se asignen en la escri-tura matriz o en los planos de un condominio como anejos para el uso particular y exclusivo de un apartamento no se deben incluir para computar su área superficial ni la par-ticipación sobre los elementos comunes.
Más detalladamente, y según las expresiones de nues-tros legisladores, existía un desconcierto en la interpreta-ción de cómo interaccionaban los Arts. 3 y 8 de la Ley de Condominios a la hora de establecer el área superficial pri-vada para calcular la participación sobre los elementos comunes. Sin embargo, antes de exponer las enmiendas al Art. 3 para remediar la situación que no quedó clara luego de la aprobación de la Ley de Condominios, bosquejaremos la legislación que afectó primero al Art. 8.
La Ley Núm. 157, supra, enmendó diametralmente diversas disposiciones de la Ley Núm. 104 de 25 de junio de 1958, conocida como la Ley de Propiedad Horizontal. Par-ticularmente, el Art. 8 fue enmendado con el propósito de variar la forma de computar la participación de los aparta-mentos sobre los elementos comunes del inmueble. Antes de la enmienda, ese cálculo se realizaba a base del valor de la propiedad privada. Empero, la referida ley dispuso que el criterio para determinar los porcentajes de participación sobre los elementos comunes se debía realizar a base de la superficie de los apartamentos. En relación con los inmue-bles ya sometidos al régimen con anterioridad a la vigencia de ese estatuto, se especificó en la Sec. 13 de la Ley Núm. 157, supra, que el nuevo criterio para establecer el porcen-taje de participación sobre los elementos comunes sola-mente sería vinculante “si así lo deciden las dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elementos comunes”. (10) De-bemos enfatizar que el Art. 8 no fue enmendado en forma *398 alguna por la Ley de Condominios de 2003, así como tam-poco se enmendó ni derogó la salvedad y especificación que hizo el legislador en la Sec. 13 de la Ley Núm. 157, supra. Más aún, el legislador no consideró este artículo en el 2003. Un vistazo a la Ley Núm. 103-2003, supra, así como al historial legislativo de esta medida lo revela(11)
Así, en la actualidad, el referido precepto establece que la participación del titular de un apartamento “en los elementos comunes del inmueble [debe ser un porcentaje] equivalente al porcentaje que represente la superficie del apartamiento en la superficie de la totalidad de apartamientos en el inmueble. En caso de apartamientos con dos o más niveles se considerará la superficie de cada nivel”. 31 L.P.R.A. sec. 1291f.
De otra parte, el Art. 3, previo a las enmiendas hechas por la Ley Núm. 281-2008, supra, expresaba que
... se entenderá por apartamiento cualquier unidad de cons-trucción suficiente delimitada, consistente de uno o más espa-cios cúbicos cerrados, parcialmente cerrados, o abiertos, y sus anejos, si algunos, aunque éstos no sean contiguos, siempre que tal unidad sea susceptible de cualquier tipo de aprovecha-miento independiente, siempre que tenga salida directa a la vía pública o a determinado espacio común que conduzca a dicha vía. (Énfasis nuestro). 31 L.P.R.A. sec. 1291a.
En aras de describir específicamente la problemática que el legislador quiso atender al aclarar este precepto, es ineludible mencionar que, previo a las enmiendas, al des-cribirse y definirse el concepto “apartamiento” en el Art. 3, *399 “se inclu[ía] como parte de esta definición la palabra y el concepto ‘anejo’, o sea, aquellas áreas del condominio que de acuerdo con la escritura matriz y los planos correspon-dientes, han sido asignadas para el uso particular de un apartamiento con exclusividad de los demás...”. Véase Ex-posición de Motivos de la Ley Núm. 281-2008, supra. Así, pues, no estaba claro si este precepto, al ser interpretado en conjunto con el Art. 8 (31 L.P.R.A. sec. 1291f), permitía que todas las áreas privativas se incluyeran en el cómputo de la superficie total de un apartamento para determinar la participación en los elementos comunes. Específica-mente, el Art. 8 no precisaba si el área superficial de los anejos también debía incluirse en dicho cómputo. Id. No obstante, a pesar de que a este artículo no lo enmendó la Ley Núm. 281-2008, supra, quedó plasmado que la inten-ción de la Asamblea Legislativa fue que el Art. 8 se inter-pretara en conformidad con lo enmendado en el Art. 3 so-bre cuáles espacios privados se deben incluir en el área superficial del apartamento.
Entonces, con relación a la confusión de si los anejos serían incluidos en el cómputo del área superficial para determinar la participación de los apartamentos de los elementos comunes, el legislador optó por permitir a los titulares de los condominios hacer dicha determinación. Como resultado, el Art. 3 fue enmendado para que leyera como sigue:
La medida superficial de aquellas áreas que sean asignadas en la escritura matriz y/o los planos constitutivos de un con-dominio como anejo de un apartamiento para su uso particular y con exclusión de los demás apartamientos, no será in-cluida para computar el área superficial del apartamiento en cuestión ni su por ciento de participación en los elementos co-munes del inmueble, a menos que el titular único de todos los apartamientos, o de haber más de un titular, todos los titulares por unanimidad, en la escritura matriz original para la cons-titución del régimen, y ¡o en aquellos documentos que se prepa-ren y otorguen para modificar un régimen ya existente, dispon-gan expresamente lo contrario para uno o más anejos, en cuyo *400 caso, sólo se tomarán en consideración para dichos propósitos aquellos anejos que así se especifiquen en la escritura matriz original o los documentos para enmendar un régimen de pro-piedad horizontal existente. (Enfasis suplido). 31 L.P.R.A. sec. 1291a.(12)
Es necesario señalar que durante el proceso legislativo que culminó en la aprobación de la Ley Núm. 281-2008, supra, DACo emitió expresiones que nos permiten indagar sobre la problemática que la Asamblea Legislativa quiso atender mediante la mencionada pieza legislativa. En particular, esta agencia comentó que la “confusión” de los sec-tores involucrados en el desarrollo y en la constitución de inmuebles al régimen de horizontalidad que la Asamblea Legislativa quiso disipar se debía al hecho de la incorrecta determinación y clasificación de los “anejos”. De esa forma, se creaba más de un por ciento de participación, basado en un área superficial incorrecta, prestándose así a confusión al momento de determinar las aportaciones de los titulares para el mantenimiento. Véase Ponencia de DACo sobre P. de la C. 3454, pág. 4. Asimismo, DACo puntualizó que las disposiciones de la Ley no eran ambiguas, sino que el pro-blema de la confusión lo causaba el desconocimiento y la imprecisión de los desarrolladores y notarios al redactar o *401 preparar los documentos constitutivos del Régimen de Pro-piedad Horizontal. Para ilustrar su contención, la agencia señaló que frecuentemente encontraba escrituras de cons-titución del régimen en las que a un apartamento se le otorgaban el uso y derecho exclusivo de un área del condo-minio, catalogando dicha área como un elemento común limitado, en vez de catalogarla expresamente como un anejo. Id., pág. 5.
D. Observamos, pues, que la designación de un área como anejo puede ser inexacta, ya sea por falta de conoci-miento o precisión al redactar la descripción de un apartamento. Por esa razón, para identificar si un área es un anejo, es imperativo profundizar sobre cómo este con-cepto ha sido atendido en el campo del derecho de propie-dad horizontal.
Ante el desacierto en la catalogación de estas áreas en la escritura matriz, primeramente debemos indicar que en la Exposición de Motivos de la Ley Núm. 281-2008, supra, los miembros de la Asamblea Legislativa ex-presaron que “[generalmente, los anejos de un apartamiento consisten de áreas de estacionamiento, patios o azoteas, que son expresamente asignadas para su uso exclusivo, particular y privado”. (Enfasis nuestro). Id.
De lo antes enunciado se puede colegir que aunque forme parte del régimen jurídico del apartamento, el anejo no es el apartamento mismo por propia definición. E. Váz-quez Bote, Tratado práctico y crítico de derecho privado puertorriqueño: derechos reales, San Juan, Ed. But-terworth, 1991, T. VIII, pág. 141. Ello se deduce del Art. 3 que define qué es el apartamento al conceptuarlo “como [un] espacio cúbico determinado y sus anejos” como base privativa fundamental. (Enfasis en el original). Id., pág. 140. Explica Vázquez Bote que al idear la figura del anejo, el legislador pretendió que tanto el apartamento como “otras partes privativas queda[rán] sometidas al mismo ré-gimen de exclusividad”. (Bastardillas en el original). Id. En *402 consecuencia, matiza que es adecuado “diferenciar, dentro de las partes privativas, el apartamento stricto sensu, de los anejos, sometidos al mismo régimen jurídico que aquel (la exclusividad legal)”. íd.
A esta tarea no abona el que la Ley de Condominios no provea una enumeración de los criterios para determinar los anejos. Solamente contamos con lo expuesto en el Art. 3 y en la lista que provee la Exposición de Motivos de la Ley Núm. 281-2008, supra, en la que el legislador dispuso una serie de elementos susceptibles de ser anejos del aparta-mento; entre ellos, las áreas de estacionamiento, los patios o las azoteas. Lo determinante, o el criterio rector para esta determinación, según expuesto en ese texto, es que sea un área susceptible de aprovechamiento independiente asignada para el uso exclusivo, particular y privado de un apartamento. Esto, claro está, debe interpretarse en con-junto con lo dispuesto en el Art. 11 de la Ley de Condomi-nios, 31 L.P.R.A. sec. 1291i, que abordaremos más ade-lante, el cual establece los elementos comunes que son susceptibles de convertirse en áreas de propiedad privada a favor de un titular.
Sin embargo, a modo comparativo es meritorio apuntar que la concepción del anejo como área privativa y accesoria al apartamento a la que aludimos anteriormente se re-fuerza con la visión enmarcada en el Art. 3.1a de la Ley de Propiedad española (LPH). Esta disposición reconoce que “el derecho singular y exclusivo de propiedad no solo se proyecta sobre el [apartamento] principal sino que alcanza los anejos”. J.J. Díaz Núñez y L.A. González Martín (Eds.) Propiedad horizontal, Consejo General del Poder Judicial, 2008, T.I, pág. 109. Específicamente, esta disposición de la LPH se refiere a los anejos como áreas “que expresamente hayan sido señaladlas] en el título, aunque se hallen situa-dos fuera del espacio delimitado”. Id., pág. 279. Por ello, comentaristas indican que para que los anejos no sean con-fundidos con los elementos comunes, estos deben ser expre- *403 sámente señalados como de propiedad separada. íd., pág. 280. Es decir, si no se especifica el área como anejo en el título constitutivo del régimen, esta se catalogaría como elemento común.
En consideración a lo anterior, es necesario exponer que el anejo es “un espacio suficientemente delimitado y susceptible de aprovechamiento independiente que está en re-lación de accesoriedad respecto a un [a]partamento ordina-rio y por razón de esa accesoriedad no tiene cuota ni abre folio registral y es de propiedad del departamento principal”; ello, aunque se halle separado del elemento privativo principal. (Enfasis nuestro). Propiedad horizontal, Consejo General del Poder Judicial, op. cit., pág. 110. Conforme a lo bosquejado, podemos describir al anejo como un área de derecho singular y exclusivo, accesoria a un elemento privativo. Después de todo, no podemos olvidar que la de-finición de “anejo”, según el Diccionario de la Real Academia Española, es algo “unido”, “agregado”, “dependiente” o “accesorio”. A esos efectos, el Art. 5 de la LPH española señala una lista de posibles anejos, entre ellos, los garajes, las buhardillas o el sótano. Empero, esta enumeración no es taxativa, por cuanto un elemento no incluido en ella puede ser anejo y viceversa. Propiedad horizontal, Consejo General del Poder Judicial, op. cit., pág. 110.(13)
Cónsono con lo expuesto, en la doctrina pertinente a la propiedad horizontal española se ha perfilado que el con-cepto anejo cuenta con las características siguientes:
1) Son espacios delimitados susceptibles de aprovecha- *404 miento independiente.
2) Son accesorios del elemento o departamento privativo a cuyo fin sirven, formando parte integrante no esencial del mismo.
3) Han de determinarse expresamente en el título constitu-tivo como tales, pues en caso contrario se considerarán ele-mentos comunes. En el mismo título se señalará el piso o local del que son accesorios, bastando una simple referencia y no siendo necesaria, aunque sí conveniente, su descripción total.
4) No tienen cuota especial de participación en los elemen-tos comunes por aprovecharles la del elemento privativo base.
5) Deben tener acceso independiente desde algún elemento común o desde la vía pública.
6) Se inscriben en el mismo folio y número del departa-mento privativo base. M. Marcos Jiménez, Elementos comu-nes, procomunales y anejos: caracteres diferenciales y disposi-ción de los mismos, 53 (Núm. 518) Rev. Crít. Der. Inmob. 131, 138 (enero-febrero 1977).
E. Ahora bien, según mencionáramos, los anejos no han sido especificados ni descritos abarcadora ni acotadamente en nuestra Ley de Condominios. Por esa razón, la conceptualización de esta figura, así como la identificación de ciertos elementos como anejo, puede resultar en imprecisiones y confusiones si no se tiene presente la voluntad legislativa y la doctrina aplicable en armonía con el resto de los preceptos aplicables al régimen de propiedad horizontal. A esos extremos, resulta conveniente abundar sobre la figura de los elementos comunes. Recordemos, pues, que en el régimen de propiedad horizontal, “el bien común sirve para el disfrute adecuado de lo privado”. Consejo Titulares v. Ramos Vázquez, 186 D.P.R. 311 (2012). Por consiguiente, en el esquema de la horizontalidad se establece “un dominio exclusivo de un bien inmueble, el cual coexiste con un condominio forzoso e inseparable de los elementos comunes”. Id., citando a Bravman, González v. Consejo Titulares, supra, pág. 14.
Por eso, la Ley de Condominios denomina las áreas de un inmueble que serán elementos comunes generales. Art. 11 de la Ley de Condominios, supra (Art. *405 11). Este precepto legal clasifica a los elementos comunes en generales “necesarios” o “voluntarios”. Consejo Titulares v. Ramos Vázquez, supra. Ello, “en atención al grado de indispensabilidad que tiene el elemento para el adecuado disfrute de las unidades privadas”. Id. A su vez, los elemen-tos comunes limitados se clasifican como aquellos que es-tán destinados al uso exclusivo de cierto número de apartamentos. Art. 12 de la Ley de Condominios, 31 L.P.R.A. sec. 1291j.
Por su parte, es preciso mencionar que los elementos comunes necesarios son aquellos sin los que “resultaría inasequible el adecuado disfrute de los apartamentos”. Consejo Titulares v. Ramos Vázquez, supra; Cestero Aguilar v. Jta. Dir. Condominio, 184 D.P.R. 1, 11 (2011). Consecuentemente, “estos quedan reservados para el uso de la totalidad de los condominos y no podrán ser susceptibles de enajenación o propiedad exclusiva de alguno o varios titulares”. Consejo Titulares v. Ramos Vázquez, supra.
En armonía con lo anterior, los elementos voluntarios son aquellos que “no son imprescindibles para el adecuado disfrute de la propiedad individual y, en consecuencia, pueden ser atribuidos a uno o varios titulares en específico”. Consejo de Titulares Cond. Torre Miramar v. Edwin Ramos Vázquez, supra. No obstante, esa adjudicación se debe realizar en la escritura matriz del condominio. A su vez, cuando esa transferencia o conversión se realice luego de la constitución del régimen, debe mediar el consentimiento unánime de los titulares. Art. 11 de la Ley de Condominios, supra. Consejo Titulares v. Ramos Vázquez, supra.
Específicamente, el inciso (b) del Art. 11 de la Ley de Condominios enumera los siguientes elementos como comunes voluntarios:
(1) El terreno, los sótanos, azoteas, patios y jardines.
*406 (2) Los locales destinados a alojamiento de porteros o encargados.
(3) Las áreas destinadas a estacionamiento.
(4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes. 31 L.P.R.A. 1291i(b).
Vemos, pues, que la azotea se clasifica como un elemento general voluntario. Art. 11 de la Ley de Condominios, supra. En particular, esta área se define como la cubierta de un edificio cuya “configuración permite su utilización como terraza o como superficie por la cual se puede andar, es decir, es susceptible de utilización como si fuera otro piso”. Godreau, op. cit., pág. 96. Véase Consejo de Titulares v. Vargas, supra, pág. 583. En consideración a ello, hemos establecido que la azotea, por “ser un elemento general voluntario, puede ser para el uso exclusivo de uno o algunos titulares”. Consejo Titulares v. Ramos Vázquez, supra.
Discutidas las enmiendas pertinentes al citado Art. 3 de la Ley de Condominios y su interacción con los Arts. 8 y 11 de dicho estatuto, supra, así como el marco jurídico conceptual aplicable a la figura del anejo, nos corresponde deter-minar si parte de la azotea del Condominio de la contro-versia de autos se debe incluir en el cómputo del área superficial del PH.
III
Con el propósito de resolver adecuadamente la contro-versia que se nos plantea, atendemos en primer lugar el segundo error del recurso de certiorari. En este, la Junta esboza que el foro apelativo intermedio incidió porque de-terminó que, conforme a la Ley Núm. 281-2008, supra, era necesario el voto unánime de los titulares para adoptar el cambio de fórmula y así computar el porcentaje de partici-pación de los apartamentos en los gastos comunes. Ex- *407 presa la Junta que la Ley Núm. 157, supra, aplica en lo referente a los requisitos de votación para dicho cambio y que, por ende, solo se necesitaba el voto de dos terceras partes de los titulares. Determinamos .que le asiste la ra-zón en cuanto a que para realizar el cambio del criterio de porcentaje de participación de los elementos comunes se requería un voto de dos terceras partes de los titulares. Ahora bien, debemos aclarar que la controversia que resol-vemos no se trata sobre si aplicaba la Ley Núm. 157, supra —con su criterio de dos terceras partes para el cambio de cómputo— en vez de la Ley Núm. 281-2008, supra, como plantea la Junta del condominio El Campeador en su se-gundo error. Esto porque, según explicamos, los citados preceptos valoran aspectos particulares y distintos sobre el cómputo de los porcentajes de participación, que en el caso de autos se deben considerar armónicamente. No obstante, pasamos a atender el segundo error. Veamos.
Según expusimos en nuestra discusión, la Ley Núm. 157 modificó a grandes rasgos la Ley Núm. 104 de 25 de junio de 1958, conocida como la Ley de Propiedad Horizontal. Esa legislación enmendó el Art. 8 para estable-cer que el porciento de participación de los apartamentos sobre los elementos comunes debe ser calculado a base de la superficie de los apartamentos. Es preciso enfatizar que en el segundo párrafo de la Sec. 13 de la Ley Núm. 157, supra, se dispuso que las comunidades de titulares ten-drían el plazo de un año para adaptar las escrituras de constitución al régimen y a los reglamentos de los inmue-bles, y que, transcurrido dicho término, estos no podrían ser aplicados en contradicción a lo establecido en dicho estatuto. No obstante, luego de así disponer, el legislador estatuyó que las enmiendas del Art. 8 solo serían vinculan-tes para los inmuebles ya sometidos al régimen de propie-dad horizontal antes de la vigencia de dicha ley “si así lo deciden dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elemen- *408 tos comunes”.(14) Es decir, el legislador excluyó taxativa-mente a estos titulares de la responsabilidad de adecuar su porcentaje de participación sobre los elementos comunes al criterio de superficie, a no ser que así decidieran hacerlo mediante el voto de dos terceras partes.
De un análisis de la Ley de Condominios podemos dedu-cir que el legislador no enmendó ni analizó en el 2003 las disposiciones del Art. 8 según quedó enmendado por la Ley Núm. 157, supra. En atención a ello, tenemos que concluir que la salvedad, que incluyó el legislador en la Sección 13 de la Ley Núm. 157, supra, con relación al Art. 8, dirigida específicamente a los condominios adscritos al régimen con anterioridad a la vigencia de dicho estatuto, no quedó de-rogada ni enmendada por la aprobación de la Ley de Con-dominios en el 2003. Por lo tanto, la retroactividad de la Ley de Condominios en nada afecta lo dispuesto en el Art. 8 ni la excepción pautada por el legislador en la Sec. 13 de la Ley Núm. 157, supra.(15)
Por todo lo anterior, cuando en un condominio —que se constituyó de acuerdo con el régimen de propiedad horizontal previo a la vigencia de la Ley Núm. 157, supra— aún se computa la participación en los elementos comunes a base del valor de la propiedad, y sus titulares deciden variar el criterio de dicho cálculo al de superficie, estos deben hacerlo mediante una votación de dos terceras partes de los titulares que, a su vez, representen las dos *409 terceras partes del valor en los elementos comunes. En consecuencia, determinamos, primeramente, que el cambio en el cómputo del porcentaje de participación sobre los ele-mentos comunes de estos condominios se debe realizar en conformidad con lo establecido por la Sec. 13 de la Ley Núm. 157, supra.
Pautamos que es así, pues en 1976 el legislador dejó en manos de los titulares de los condominios ya adheridos al régimen hasta ese momento la decisión de si cambiaban el criterio del porcentaje de participación sobre los elementos comunes. Por consiguiente, no podemos descartar que exis-tan condominios afectados por la Ley Núm. 157, supra, que aún computan la participación en los elementos comunes a base del criterio de valor de la propiedad; ya sea porque no han celebrado una asamblea para modificar la fórmula o, ya celebrada, no consiguieron los votos necesarios que es-tableció la citada norma para la modificación. Precisa-mente, ese es el caso del Condominio del caso de autos, el cual se sometió al régimen de propiedad el 16 de junio de 1972 y no fue hasta el 2 de diciembre de 2009 que sus titulares celebraron una asamblea para auscultar la posi-bilidad de variar el criterio del cómputo de la participación en los elementos comunes basada en el valor de la propie-dad, al criterio de medida superficial.
Cónsono con lo expuesto, al evaluar el cambio en la fór-mula de la cuota de mantenimiento del caso de autos, te-nemos que concluir que se hizo conforme a los requisitos estatutarios aplicables. Esa modificación la aprobó el 87.5795% de los titulares, lo cual evidentemente excede el voto de dos terceras partes requeridos por la Ley Núm. 157, supra.
Ahora bien, resuelto que podía hacerse el cambio del cómputo de participación conforme al criterio de medida superficial, nos corresponde resolver la aplicabilidad de la Ley Núm. 281-2008, supra, la cual precisó que dentro de la medida superficial del apartamento como regla general no *410 se incluirá el anejo. Con relación a este extremo, en su primer planteamiento de error, la Junta expone que el Tribunal de Apelaciones erró al concluir que la Ley Núm. 281-2008, supra, aplica al caso de autos. Asimismo, dice que erró el foro a quo al interpretar que el área de la azotea del PH es un anejo. Particularmente, la Junta plantea que como parte de la superficie de la azotea es un área priva-tiva del PH, esta debe incluirse en el área total privada de esa propiedad.(16) Asimismo, arguye que la azotea no forma parte de los “anejos” mencionados en la Ley Núm. 281-2008, supra, previamente reseñada. No le asiste la razón. Veamos.
La escritura matriz del condominio El Campeador describe al PH como sigue:
De forma irregular localizado en las duodécima y decimoter-cera plantas del edificio “El Campeador” en San Juan, Puerto Rico, con un área total privada de siete mil seiscientos cin-cuenta y cuatro pies cuadrados (7654.00), equivalentes a sete-cientos once metros cuadrados con treinta y cinco centésimas de otro (711.35), midiendo cuarenta y tres pies cinco pulgadas en su mayor ancho por ciento seis pies ocho pulgadas en su mayor longitud. Consta en la planta duodécima de terraza, family room, comedor, sala, cocina completamente equipada, cuarto de lavado, despensa, cuatro dormitorios con sus closets, vestidor, cinco baños, área de barra, foyer y estudio. Consta en la planta décimo tercera de terraza y cuarto para acondiciona-miento de aire...
El área comprendida por una distancia de cuatro pies lineales hacia el Este y cuatro pies lineales hacia el Norte medidos de las paredes Este y Norte respectivamente de la escalera y cuarto de máquinas en la planta decimotercera, será un área común limitada a través de la cual siempre tendrán acceso aquellas personas empleadas para reparar o darle manteni-miento a los ascensores del edificio y el incinerador. (Énfasis nuestro). Apéndice del Certiorari, págs. 159-160.(17)
En la séptima parte de la escritura matriz sobre ele- *411 mentos generales, específicamente en su sección cuarta, se identifica como tal el área:
(E) En la decimotercera planta escalera de acceso al cuarto de máquinas y cuarto de máquinas de dos plantas de altura, in-cluyendo su techo, con un área de mil sesenta y dos punto ochenta y dos pies cuadrados, equivalentes a noventa y ocho punto setenta y ocho metros cuadrados. Apéndice del Certio-rari, págs. 164-165.
Asimismo, la escritura matriz define y detalla el área de la azotea del Condominio la cual describe como sigue:
CUARTO: DESCRIPCIÓN DEL EDIFICIO CON EXPRE-SIÓN DE SUS ÁREAS Y MATERIALES DE CONSTRUC-CIÓN.
El edificio tiene una azotea conteniendo dos pozos de ascenso-res, una escalera, un cuarto de máquinas de aire acondicio-nado, un closet, cámara de asentamiento del incinerador, es-calera, de acceso al cuarto de máquinas, cuarto de máquinas de los elevadores y azotea del cuarto de máquinas, todo ello con un área de cinco mil ciento noventa y uno pies cuadrados con ochenta y cuatro centésimas de otro (5,191.84)... Apéndice del Certiorari, págs. 106 y 109.
En la cuarta parte de la sección octava de la escritura titulada “ELEMENTOS COMUNES LIMITADOS” se in-dica como tal al
[p] asillo en la azotea con un área de ciento setenta y cinco punto cincuenta y un pies cuadrados, equivalentes a dieciséis punto treinta y un metros cuadrados, para accesibilidad a la escalera y cuarto de máquina en la planta decimotercera, para efectuar trabajos de reparación o de mantenimiento en los as-censores del edificio y el incinerador. Apéndice del Certiorari, pág. 167.
Más adelante, en el párrafo número dos de la sección “Duodécimo” de la escritura matriz se expresa que:
La azotea perteneciente al apartamento residencial PH podrá ser cercada y cubierta total o parcialmente con la aprobación del arquitecto del edificio, y de tal manera que no resulte afec-tada la seguridad, estética y forma actual de las fachadas ex- *412 teriores del edificio, así como de que no impida el libre acceso al cuarto de máquinas e incinerador según dispuesto anteriormente. Apéndice del Certiorari, pág. 177.
Se deduce claramente del citado texto que parte de la azotea del Condominio, según descrita en la escritura, es un anejo perteneciente al PH, pues es un elemento privado que guarda una relación de accesorio con el apartamento principal. Además, según podemos apreciar de las citadas partes de la escritura matriz, el área destinada al PH cons-tituye un espacio delimitado susceptible de aprovecha-miento independiente. Al estar ubicado en la azotea, se tiene acceso independiente desde un elemento común.
Concluido que el área en controversia es un anejo del PH, queda por determinar si correspondía incluir dicha área en la medida superficial del apartamento para calcu-lar el porcentaje de participación de esa propiedad sobre los elementos comunes. Ello a la luz de la interacción entre el Art. 3 y el Art. 8.
Para propósitos aclaratorios, debemos puntualizar que en el presente caso los titulares decidieron hacer dos cam-bios regulados por enmiendas y disposiciones particulares que son distintas entre sí, utilizando un solo trámite de votación. Lo cierto es que para cambiar el cómputo de los porcentajes de participación, los titulares del Condominio debían contar con el voto de la mayoría de dos terceras partes de los titulares que, a su vez, representaran dos terceras partes del valor en los elementos comunes. Así lo hicieron y, según aquilatamos, dicho cambio fue conforme a derecho. Ahora bien, con ese mismo porciento de votos no se podía aprobar que en la medida superficial del PH se contabilizara el área de la azotea; lo cual resultó en un aumento en la cuota de mantenimiento de $699 a $1,370 para el inmueble.
Según indicamos anteriormente, la Ley Núm. 281-2008, supra, enmendó la Ley de Condominios para aclarar la falta de precisión del Art. 8 referente a cómo se *413 computaría la participación de los apartamentos sobre los elementos comunes. En específico, la referida enmienda puntualizó que la superficie de los anejos que forme parte del apartamento no se considerará al momento de compu-tar el porciento de participación sobre los elementos comunes. Art. 3 de la Ley de Condominios, supra. Asi-mismo, se dispuso que en la eventualidad de que los titu-lares deseen que los anejos se incluyan en dicho cálculo, ello debe acordarse unánimemente, especificando qué ane-jos se considerarán. Id.
La Ley Núm. 281-2008, supra, era la legislación vigente cuando los titulares del condominio El Campeador efectua-ron el cambio. ¿Correspondía entonces incluir los anejos en la medida superficial cuando la norma general vigente dicta lo contrario? Resolvemos que no. No hay razón para aplicar las disposiciones del Art. 8 sin considerar su posterior aclaración por medio de la enmienda al Art. 3 de la Ley de Condominios, supra, en el 2008. Afirmamos que la ley vigente sostiene, sin lugar a dudas, nuestra interpretación porque cuando se realizó el cambio del porciento de parti-cipación de los elementos comunes, ya estaba vigente la Ley Núm. 281. En consecuencia, si los titulares del condo-minio El Campeador deseaban incluir al cómputo de la me-dida superficial los anejos de los apartamentos (en confor-midad con el vigente Art. 3 de la Ley de Condominios, supra), era necesario que hubiese unanimidad de los titu-lares para así proceder. Correspondía, entonces, realizar una votación independiente de la primera para realizar este cambio.
Ciertamente, el Consejo ignoró el mandato de ley esta-tuido en el citado Art. 3 con relación a qué se debe incluir en la superficie del apartamento, específicamente, para propósitos del cómputo de dicha cuota. Por esa razón, es obligatorio concluir que según el derecho aplicable, esa en-mienda a la cuota de mantenimiento no procedía, pues en el presente caso la parte de la azotea es un anejo del PH *414 según descrito. Consiguientemente; la azotea no debió in-cluirse en el área superficial del apartamento en cuestión, contando solamente con el voto del 87.5795% de los titulares. De acuerdo con el propio Art. 3, para realizar tal cambio era imperativo el voto unánime de los titulares.(18)
A este punto, es pertinente hacer hincapié en que es errada la postura esbozada por el Juez Presidente Señor Hernández Denton en su opinión disidente, de que las en-miendas realizadas en el 2008 mediante la Ley Núm. 281-2008, supra, al Art. 3 de la Ley de Condominios, supra, se pueden aplicar únicamente a los inmuebles sometidos al régimen de propiedad horizontal con posterioridad a la vi-gencia de esa ley. Aclaramos que la aplicabilidad de la ley no está sujeta al momento en que se somete un inmueble al régimen. Consideramos hoy el momento en que los titula-res del Condominio decidieron modificar el criterio de cóm-puto de su participación sobre los elementos comunes. No es necesario hablar, entonces, de la aplicación retroactiva de la ley.
Por consiguiente, es equivocada la afirmación de que el efecto de nuestra decisión es que todos aquellos condomi-nios que a partir de 2003 —en cumplimiento de la ley— calcularon la participación de los elementos comunes sobre el área superficial, incluso los anejos, tengan que devolver el dinero pagado en exceso por aquellos titulares que ten-gan un anejo para su uso exclusivo.
Cuando el legislador aprobó la Ley Núm. 281-2008, supra, precisó que los anejos —como regla general— *415 no se deben incluir en el cómputo de la medida superficial de los apartamentos. Así, expresó y aclaró cuál fue su in-tención original en la Ley de Condominios de 2003, de ma-nera tal que dejó en manos de los titulares determinar si el área del anejo se debe incluir en dicho cómputo. Opinamos que el efecto que esta aclaración legislativa acarrea es mantener lo dispuesto en las escrituras matrices otorgadas con anterioridad a la aprobación de la Ley Núm. 281-2008, supra. No obstante, se reconoce a los titulares la potestad de establecer un porciento distinto que incluya los anejos, si ello se logra mediante un consenso unánime. Es decir, si la escritura matriz dispone que el anejo se incluya en la medida superficial del apartamento para calcular el por-ciento de participación, o si no lo hace, el legislador ha validado tales acciones. En consecuencia, el documento pú-blico regirá el asunto hasta que los titulares decidan cam-biarlo conforme a la ley.
De otra parte, la disidencia afirma que de acuerdo con la retroactividad dispuesta en el Art. 44 de la Ley de Con-dominios de 2003, para este momento todos los inmuebles sometidos al régimen de propiedad horizontal tienen que utilizar la fórmula de superficie para el cálculo de partici-pación en los elementos comunes. 2003 (Parte 1) Leyes de Puerto Rico 355, 410. Tal aseveración es contraria al es-tado de derecho. Como señaláramos, el Art. 8 no fue en-mendado en el 2003. Consecuentemente, opinamos que la conclusión de la disidencia de que a partir del 2003 “todos los condominios debían ajustar sus escrituras y reglamen-tos para cumplir cabalmente con las disposiciones de la Ley del 2003, incluyendo computar sus participaciones so-bre los elementos comunes utilizando el área superficial” (opinión disidente, pág. 422), trastoca la estabilidad de aquellos condominios que, amparados en la Sec. 13 de la Ley Núm. 157, supra, celebraron una asamblea y mediante votación decidieron mantener el criterio de precio para cal-cular la participación en los elementos comunes. Incluso, *416 ignora el impacto económico que puede tener la derogación de la salvedad que hizo la citada Sec. 13. Esto es, que todos los condominios sometidos al régimen antes de la vigencia de la Ley Núm. 157, supra, que aun computan la partici-pación sobre los elementos comunes a base del precio, ten-gan que hacerlo ahora a base de la superficie sin pasar por el cedazo de la votación de dos terceras partes de los titulares. Esta legislación judicial crearía, sin lugar a du-das, “innumerables... consecuencias negativas... sobre el estado de derecho vigente en el tema de propiedad horizontal”. Opinión disidente, pág. 427.
Cónsono con lo anterior y recapitulando, en el caso de autos estamos ante un anejo del apartamento de la señora Trigo Margarida. La peculiaridad de esta controversia es que en el régimen del Condominio aún se disponía el por-ciento de participación sobre los elementos comunes a base del valor de la propiedad. Sin embargo, en el 2009 los titu-lares optaron por cambiar ese enfoque al del área superficial. En ese contexto y conforme al derecho aplica-ble, resolvemos que se necesitaba la votación de dos terce-ras partes de los titulares para variar el criterio de dicho cálculo al de medida superficial. Asimismo, resolvemos que el anejo no se puede incluir en el cómputo de la medida superficial del apartamento de la señora Trigo Margarida porque no se cumplió con el requisito de unanimidad para así proceder, conforme a la voluntad legislativa decretada en la Ley Núm. 281-2008, supra.
En consideración a lo antes expuesto, si bien las agencias administrativas merecen deferencia en sus dictámenes, concluimos que en el caso de autos DACo cometió un craso error de derecho al validar el cambio en la fórmula de la cuota de mantenimiento del Condominio. Particularmente, esta agencia incidió al no evaluar las disposiciones del Art. 3 en conjunto con el Art. 8 y al determinar que la azotea no era un anejo. Así, pues, erró al concluir *417 que dicho elemento debía incluirse en la fórmula del área superficial del PH. En ese sentido, la azotea como elemento puede ser privado, común general o, incluso, elemento co-mún limitado según establece el Art. 11(b) de la Ley de Condominios, supra. Empero, de acuerdo con las enmien-das realizadas por la Ley Núm. 281-2008, supra, al Art. 3, es forzoso concluir que una vez ese elemento se identifica con las características de un anejo perteneciente a un apar-tamento, el mismo puede incluirse en el cálculo de la cuota de mantenimiento con el consentimiento unánime de los titulares.
Reiteramos, entonces, que en el caso de autos, la parte de la azotea en cuestión, por ser un anejo, no se podía in-cluir en el área superficial del apartamento para calcular la cuota de mantenimiento. Claro está, no existe impedi-mento para que la Junta convoque otra asamblea para aprobar el cambio en la fórmula del porcentaje de participación. No obstante, advertimos que para así ha-cerlo tiene que contar, esta vez, con el voto unánime de los titulares.
IV
Por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Apelaciones que, a su vez, revocó la resolución de DACo que validó el aumento de la cuota de mantenimiento del apartamento de la señora Trigo Margarida. La parte de la azotea perteneciente al PH es un anejo de esa propiedad. Por lo tanto, no puede ser incluida en el cómputo para determinar la participación del apartamento sobre los elementos comunes. En conse-cuencia, se devuelve el caso a DACo para que realice el cómputo del porcentaje de participación del PH sobre los elementos comunes conforme a lo aquí pautado.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió *418 con una opinión escrita. La Juez Asociada Señora Rodrí-guez Rodríguez disintió sin opinión escrita.
— O —

 El condominio El Campeador consta de veinticuatro apartamentos y fue so-metido al régimen de propiedad horizontal el 16 de junio de 1972 ante el notario público Ledo. Peter J. Trías.

 No surge del legajo de autos una lista con los nombres de los titulares que estuvieron presentes. Aunque en la minuta se menciona el nombre de la señora Trigo Margarida, no podemos concluir que esta votara a favor de la enmienda impugnada.

 En particular, la Minuta revela que tras la recomendación de dos abogados, el cambio en la fórmula se realizó para conformar el cómputo a unas enmiendas realizadas a la Ley de Propiedad Horizontal por la Ley Núm. 157 de 4 de junio de 1976. Véase Minuta de la reunión anual de titulares de 2 de diciembre de 2009, Apéndice del Certiorari, pág. 51.

 La Sra. Sylvia Trigo falleció el 27 de diciembre de 2010. Dicha parte fue sustituida en el pleito por su hermana, la Sra. Carmen M. Trigo Margarida, y sus sobrinas, las señoras Mercedes del Carmen, María C. y María Z. Trigo Ferraiuoli, en representación del Sr. Dionisio R. Trigo Margarida. Apéndice del Certiorari, pág. 236 esc. 1.

 Véase Apéndice del Certiorari, pág. 20.

 Apéndice del Certiorari, pág. 36.

 Según la escritura matriz, el área total del apartamento PH es de 7,654 pies cuadrados.

 Minuta de la reunión anual de titulares de 2 de diciembre de 2009, Apéndice del Certiorari, pág. 53. Se determinó que la fecha de efectividad del cambio en el cálculo sería a partir del 1 de enero de 2010.

 No surge del legajo de autos una lista con los nombres de los titulares que estuvieron presentes. Aunque en la minuta se menciona el nombre de la señora Trigo Margarida, no podemos concluir que esta votara a favor de la enmienda impugnada.

 1970 Leyes de Puerto Rico 510.

 Véase el título de la medida, que dispone:
“Para enmendar el Artículo 1 y añadir un Artículo 1-A; enmendar los Artí-culos 2, 9, y 11; añadir un nuevo Artículo 11-A; enmendar los Artículos 13, 14; adicionar un Artículo 14-A, enmendar los Artículos 15, 15-A, 16, 17, 18, 22, 24, 25, 26, 27, 32-A, 33, 36-A, 37; adicionar el Artículo 37-A; enmendar los Artículos 38, 38-A, 38-B, 38-C, 38-D; añadir un nuevo Artículo 38-E y renumerar el Artí-culo 38-E como Artículo 38-F; añadir el Artículo 38-G; enmendar los Artículos 39, 41, 42, 43, 44, 47,48, 49, 50, 51; adicionar un nuevo Artículo 53 y 54 a la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como ‘Ley de la Propiedad Horizontal’, a fin de redenominar la ley como ‘Ley de Condominios’ y actualizarla a las realidades sociales de nuestros tiempos”.

 Es preciso mencionar que este artículo se volvió a enmendar mediante la Ley Núm. 17-2012 (31 L.P.R.A. sec. 1291a), conocida como la Ley para Propiciar y Flexibilizar el Desarrollo de Vivienda bajo el Régimen de Propiedad Horizontal. La parte previamente citada del artículo no se afectó por esta enmienda. No obstante, para propósitos ilustrativos citamos la fracción del Art. 3 enmendada según dispone actualmente:
“A los efectos de esta Ley, se entenderá por ‘apartamiento’ cualquier unidad de construcción en un inmueble sometido al régimen establecido en esta Ley, que se encuentre suficientemente delimitada y que consista de uno o más espacios cúbicos total o parcialmente cerrados o abiertos, conjuntamente con sus anejos, si alguno, aunque estos no sean contiguos, siempre que tal unidad sea susceptible de cualquier tipo de aprovechamiento independiente y tenga salida directa a la vía pública o a determinada área privada (ya sea ésta un elemento común del condominio, o un área compartida por dos o más condominios u otros desarrollos, o un área privada que exista y/o haya sido designada como acceso para dos o más condominios u otras áreas de desarrollo residencial, comercial, mixta o de cualquier otro tipo), que eventual-mente conduzca a una vía pública mediante una servidumbre de paso u otro meca-nismo legal, según lo anterior sea aprobado por las entidades públicas o euasi-públicas con jurisdicción. La medida superficial de aquellas áreas...”. 31 L.P.R.A. sec. 1291a.

 Es necesario mencionar que el Art. 396 del Código Civil español prescribe que los elementos comunes son anejo inseparable de la parte denominada privativa. Sin embargo, la utilización del término anejo en ese contexto ha sido criticada por ser "desafortunada”. J.J. Díaz Núñez y L.A. González Martín, Propiedad horizontal, Consejo General del Poder Judicial, 2008, T. I, pág. 281. Véase, además, M. Marcos Jiménez, Elementos comunes, procomunales y anejos: caracteres diferenciales y dis-posición de los mismos, 518 Rev. Crít. Der. Inmob. 138 (1977). Por ello, dicha alusión debe ser entendida no en su sentido técnico, sino en su sentido gramatical, pues los elementos comunes tienen una relación accesoria y de servicio con las áreas privativas. Id.

 1976 Leyes de Puerto Rico 484, 510.

 En Consejo Titulares v. Williams Hospitality, 168 D.P.R. 101 (2006), al ana-lizar el Art. 44 de la Ley de Condominios, 2003 (Parte 1) Leyes de Puerto Rico 355, 410, pautamos que el momento jurídico en que el inmueble fue sometido al régimen no da lugar a distinción alguna en cuanto a la aplicación de la ley. Así, determinamos que conforme a la intención legislativa expuesta en el trámite de aprobación de la Ley de Condominios, esta era de aplicación retroactiva, pues solo de esa forma se aseguraría que se cumpliera el propósito del legislador. No obstante, en lo que con-cierne al caso de autos, y según expusimos en el texto de nuestra ponencia, el legis-lador no analizó el Art. 8 en el 2003. Por lo tanto, sería arbitrario e injustificado concluir que lo que el legislador estatuyó en la Ley Núm. 157 de 4 de junio de 1976, con relación a la aplicación de la enmienda del Art. 8, lo trastocó la Ley de Condominios.

 Certiorari, pág. 4.

 Similar descripción se hace en la escritura de compraventa del apartamento. Apéndice del Certiorari, pág. 24.

 Recordemos que el Art. 38-C(d) de la Ley de Condominios, 31 L.P.R.A. sec. 1293b-3, dicta que “[c]uando todos los titulares presentes en una reunión convocada para tomar un acuerdo que requiera unanimidad, adoptasen dicho acuerdo, aquellos que, debidamente citados no hubieren asistido serán notificados de modo fehaciente y detallado del acuerdo adoptado, y, si en un plazo de treinta (30) días a partir de dicha notificación no manifestaren en la misma forma su discrepancia quedarán vinculados por el acuerdo que no será ejecutable hasta que transcurra tal plazo, salvo que antes manifestaren su conformidad”. Es necesario señalar que del legajo de autos no se infiere evidencia alguna de que las notificaciones sobre lo decidido en la Asamblea de 2 de diciembre de 2009 fueron debidamente enviadas a los titulares ausentes.